NATHAN L. MASON and YVONNE E. MASON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mason v. Commissioner
Docket No. 9518-80
United States Tax Court
T.C. Memo 1982-376; 1982 Tax Ct. Memo LEXIS 371; 44 T.C.M. (CCH) 365; T.C.M. (RIA) 82376; July 1, 1982
*371 P was a pilot of a C-130 in the Air National Guard. He took flight training courses which led to his obtaining an FAA flight engineer's certificate for the Boeing 727 and an airline transport pilot certificate for the C-130. Held, the expenses of the flight engineer course are not deductible as ordinary and necessary business expenses since such training did not maintain or improve the skills required by P in his employment as a pilot, and such training led to P's qualifying for a new trade or business. Held, further, the obtaining of an airline transport pilot certificate was not a minimum requirement for P's employment, nor did it qualify P for a new trade or business; therefore, the expenses for the courses P took which led to his obtaining such certificate were ordinary and necessary business expenses. William E. Frantz, for the petitioners. Lourdes M. DeSantis, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $ 1,168.22 in the petitioners' Federal income tax for 1976. The issues for decision are: (1) Whether expenses incurred by Mr. Mason for flight training are deductible as educational expenses; and (2) if such expenses are so deductible, whether the deduction must be reduced to the extent Mr. Mason was reimbursed for such expenses by nontaxable benefits from the Veterans' Administration. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Nathan L. and Yvonne E. Mason, husband and wife, resided in the State of Georgia at the time they filed their petition in this case. They filed their joint Federal income tax return for 1976 with the Internal Revenue *373 Service Center, Fresno, Calif.
Mr. Mason graduated from college in June 1969, with a B.S. degree in business administration. Upon his graduation from college, he went on active duty with the United States Air Force (USAF), where he was commissioned and received pilot training. Based on his military training, he received from the Federal Aviation Administration (FAA) a commercial pilot's license, with instrument rating. While he was in the USAF, Mr. Mason served as a pilot of C-130 aircraft. The C-130 is a four-engine turboprop aircraft primarily used to carry cargo. In May 1975, Mr. Mason resigned his regular commission and accepted a reserve commission. On May 14, 1975, he received an honorable discharge from the USAF. At that time, he had approximately 2,000 hours of flight time. After his discharge, Mr. Mason tried to obtain a position with an Air Force Reserve or an Air National Guard unit. Also, he applied for a position with every major airline. From June to November 1975, he was employed by a management consulting firm in Los Angeles, Barry & Company. In November 1975, he took a job as a warehouse foreman with Byron Jackson Pump Division of Borg-Warner Corp. In March *374 1976, he quit such job. In February 1976, Mr. Mason received an offer of a position with an Air National Guard unit in Van Nuys, Calif. He was scheduled to commence his employment in April 1976, but due to a delay in his orders, he did not commence work until June 9, 1976. His duty with such unit was as a pilot of C-130 aircraft. During the period June 9, 1976, to December 31, 1976, he was on active duty with the California Air National Guard (CANG) a total of 67 days. During such period, he was also employed by Lincoln National Life Insurance Co., Barry & Company, and the Gillette Company. During April and May 1976, Mr. Mason attended a flight training course at Fowler Aeronautical Service. In May 1976, as a result of attending such course, he obtained a flight engineer's certificate from the FAA for turbojet aircraft. Such training was accomplished on, and his FAA examination was taken on, the Boeing 727 aircraft. The cost of such course was $ 4,818.00. In July 1976, he received reimbursement of $ 4,117.50 from the Veterans' Administration (VA) for such course. Mr. Mason was not required to have a flight engineer's certificate from the FAA in order to work as a pilot for *375 CANG. In August 1976, Mr. Mason submitted an employment application to Delta Air Lines, Inc. (Delta). On such application, he indicated that he had commenced duty with CANG and that he possessed a flight engineer's certificate for Boeing 727 aircraft. Also, he listed Lincoln National Life Insurance Co. as his prior employer and stated that his reason for leaving such employment was to pursue a flying career in the civilian market. In October 1976, Mr. Mason attended a flight training course given by Aviation Training Enterprises, Inc. The cost of such course was $ 136.00. In December 1976, he attended a flight training course given by Bill Phelps Aviation Ground School. The cost of such course was $ 200.20. Mr. Mason took such courses to assist him in passing the FAA airline transport pilot rating examination. It is necessary to have such rating to be a pilot in command on a particular aircraft in commercial service. Shortly after he took such courses, Mr. Mason passed the FAA examination and received an airline transport pilot certificate for the C-130 aircraft. There is no record that in 1976 he received any reimbursement from the VA for the costs of such courses. In *376 February 1977, and again in May 1977, Mr. Mason wrote to Delta to update his employment application. In such letters, he reported that he had increased his flying proficiency through his activities with CANG and that he had obtained an airline transport pilot certificate for the C-130 aircraft. Delta uses the term second officer to designate the position of flight engineer. In order to be hired by Delta as a second officer, Delta required that an individual be at least 21 years of age, have a commercial pilot's license with instrument rating, have a radio license, and be able to pass an FAA physical, and Delta preferred that such individual be a college graduate. Also, a minimum of 1,500 hours of flight time was generally required. Delta did not require that a commercial pilot's license be obtained on any particular aircraft, nor did it require that a second officer have a flight engineer's rating or an airline transport pilot rating at the time of employment. However, a flight engineer's rating was required prior to the time an individual actually commenced work as a second officer. The fact that an individual possessed a flight engineer's rating did not necessarily give him *377 a better chance of being hired, but the majority of the individuals hired by Delta possessed such a rating. At the time he was discharged from the USAF, Mr. Mason believed that he possessed the minimum qualifications for employment with Delta. However, during 1976, there was substantial competition for positions with major airlines. In August 1977, Mr. Mason was hired by Delta as a second officer trainee. On their joint Federal income tax return for 1976, the petitioners claimed a deduction of $ 5,154.20 for educational expenses. Such amount consisted of the $ 4,818.00 for the course Mr. Mason took at Fowler Aeronautical Service, the $ 136.00 for the course he took at Aviation Training Enterprises, Inc., and the $ 200.20 for the course he took at Bill Phelps Aviation Ground School. The petitioners stated that such courses were taken as "Education required to improve skills required to perform duties associated with professional pilot." In his notice of deficiency, the Commissioner disallowed such deduction in its entirety on the ground that the petitioners had not shown that the expenses were incurred primarily to maintain or improve skills required in Mr. Mason's employment *378 in 1976. At trial and on brief, the Commissioner raised the additional ground that such deduction should be disallowed to the extent Mr. Mason was reimbursed by the VA for such courses. OPINION Section 162(a) of the Internal Revenue Code of 1954[1] allows a deduction for all the ordinary and necessary expenses paid or incurred by a taxpayer during the taxable year in carrying on his trade or business. Section 1.162-5, Income Tax Regs., sets forth objective criteria for the deduction of amounts expended by a taxpayer for education. Section 1.162-5(a) of the regulations provides the general rule that, except as otherwise provided in paragraph (b) of such section, expenditures which maintain or improve the skills required by the taxpayer in his employment or other trade or business or which meet the express requirements of the taxpayer's employer are deductible. Paragraph (b) of such section specifically denies a deduction for education which is part of a program of study which will lead to qualifying the taxpayer in a new trade or business, even though the education may maintain or improve skills required in the taxpayer's employment. *379 The petitioners contend that Mr. Mason was in the trade or business of being a pilot and that the flight training courses he took helped to maintain and improve his skills as a pilot. Also, they contend that although such courses helped him to obtain a flight engineer's certificate and an airline transport pilot certificate, a flight engineer and an air transport pilot are not separate and distinct trades or businesses; they argue that they are a specialty or a skill within Mr. Mason's existing trade or business of being a pilot. Although the Commissioner concedes that Mr. Mason's employment with CANG constituted a separate trade or business, he argues that such courses did not maintain or improve Mr. Mason's skills in such employment and that Mr. Mason's reason for taking such courses was to improve his chances of being hired by a major airline. However, the Commissioner's primary argument is that such expenses are not deductible since they qualified Mr. Mason for a new trade or business. Whether education maintains or improves skills required by the taxpayer's employment is a question of fact. Boser v. Commissioner, 77 T.C. 1124, 1131 (1981); Baker v. Commissioner, 51 T.C. 243, 247 (1968). *380 The burden of proof is on the taxpayer. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering, 290 U.S. 111 (1933); Wassenaar v. Commissioner, 72 T.C. 1195, 1199 (1979). In order to meet such burden, the petitioners must show that there was a direct and proximate relationship between the flight training courses taken by Mr. Mason and the skills required in his employment at that time as a pilot with CANG. Kornhauser v. United States, 276 U.S. 145, 153 (1928); Boser v. Commissioner, supra; Carroll v. Commissioner, 51 T.C. 213, 218 (1968), affd. 418 F. 2d 91 (7th Cir. 1969). A precise correlation is not necessary, and the educational expenditure need not be for training which is identical to Mr. Mason's prior training so long as it enhances existing employment skills. Boser v. Commissioner, supra;Lund v. Commissioner, 46 T.C. 321, 331-332 (1966). Flight Engineer Course
The petitioners contend that the flight engineer course taken by Mr. Mason at Fowler Aeronautical Service had a proximate relationship to his skills as *381 a pilot. In support of such contention, they rely on the testimony of their expert witness, a pilot and instructor for Delta. Such expert testified that there were similarities between a C-130 aircraft (the aircraft Mr. Mason flew for CANG) and the Boeing 727 aircraft (the aircraft in which he trained) and that training in the Boeing 727 would maintain or improve his proficiency in the C-130. However, such expert did not elucidate how flight engineer training would improve Mr. Mason's skills as a pilot. In the USAF and in the CANG, as well as in commercial service, the duties of a flight engineer are quite different from those of a pilot. In the USAF and the CANG, the flight engineer is required to be an enlisted member of the USAF and is engaged in an engineering occupation. He is responsible for keeping the engines and other equipment of the aircraft in operational condition. See 14 C.F.R. sec. 63.39 (1981). On the other hand, a pilot is required to be a commissioned officer, as was Mr. Mason, and is responsible for flying the aircraft. See Brandt v. Commissioner, T.C. Memo. 1982-180; McElhany v. Commissioner, T.C. Memo. 1981-547; *382 see also Lund v. Commissioner, 46 T.C. at 323. Also, Mr. Mason testified that he was not required to have a flight engineer's certificate in order to work as a pilot for CANG. In addition, the flight training Mr. Mason took on the Boeing 727 aircraft did not qualify him to serve as a flight engineer on the C-130 aircraft. See 14 C.F.R. sec. 63.33 (1981). Accordingly, we find and hold that the petitioners have failed to prove either that Mr. Mason's flight engineer training was helpful to him in his work as a pilot or that there was a direct and proximate relationship between such training and such work. Moreover, even if we were to find that there was such a direct and proximate relationship, the expenses incurred by Mr. Mason for flight engineer training are not deductible since they qualified him for a new trade or business. Sec. 1.162-5(b)(3), Income Tax Regs. The petitioners argue that a flight engineer is not a separate trade or business from that of a pilot. They point to the fact that, to be hired by Delta as a second officer, an individual need not possess an FAA flight engineer's certificate, that all of the members of the flight *383 crew on Delta aircraft, including the second officer, are pilots, and that the possession of such a certificate would not have improved Mr. Mason's chances of being hired. However, we have already found that the flight engineer training did not significantly assist Mr. Mason in his work as a pilot of the C-130, that in 1976, there was intense competition for positions with the commercial airlines, and that most of the second officers employed by Delta had received flight engineer training. These circumstances make it abundantly clear that the flight training did not merely improve Mr. Mason's skills as a pilot of the C-130, but they suggest that such training contributed materially to qualifying him for a new trade or business. Section 1.162-5(b)(1), Income Tax Regs., provides an objective standard for determining whether the education qualifies the taxpayer for a new trade or business. Robinson v. Commissioner, 78 T.C. (April 7, 1982); Browne v. Commissioner, 73 T.C. 723, 727 (1980); Bodley v. Commissioner, 56 T.C 1357, 1361 (1971). In applying such standard, we have adopted a commonsense approach in deciding whether an educational expenditure *384 qualifies the taxpayer for a new trade or business and, hence, was nondeductible. Grover v. Commissioner, 68 T.C. 598, 601 (1977); Davis v. Commissioner, 65 T.C. 1014, 1019, (1976); Glenn v. Commissioner, 62 T.C. 270, 275 (1974); Weiszmann v. Commissioner, 52 T.C. 1106, 1110 (1969), affd. per curiam 443 F. 2d 29 (9th Cir. 1971). As stated in Glenn v. Commissioner, such determination is made by -- a comparison * * * between the types of tasks and activities which the taxpayer was qualified to perform before the acquisition of a particular title or degree, and those which he is qualified to perform afterwards. * * * [62 T.C. at 275.] If substantial differences exist in the tasks and activities of various occupations or employments, then each such occupation or employment constitutes a separate trade or business. Davis v. Commissioner, supra.
The petitioners' argument that Mr. Mason's flight engineer training did not improve his employability with Delta misses the point. The issue is not whether he would have been hired by Delta, or any other airline, but *385 rather whether after such training, he was qualified to perform a task that he was not qualified to perform prior to such training. Robinson v. Commissioner, supra; Glenn v. Commissioner, supra.It is clear that the duties, responsibilities, and licensing requirements for a pilot are different from those of a flight engineer, and that a flight engineer is in a different trade or business than that of a pilot. See Lund v. Commissioner, supra; 14 C.F.R. secs. 61.125, 61.127, 61.129, 63.3, 63.37, 63.39, 121.385(d), 121.387 (1981).[2] Hence, for this additional reason, we hold that the petitioners are not entitled to deduct the $ 4,818 paid to Fowler Aeronautical Service. Moreover, since Mr. Mason was partially reimbursed for such expense by the VA during 1976, he is not, in any event, entitled to deduct such expense to the extent of the reimbursement. Manocchio v. Commissioner, 78 T.C. (June 14, 1982). *386 Airline Transport Pilot Courses
The Commissioner argues that the courses Mr. Mason took at Aviation Training Enterprises, Inc., and Bill Phelps Aviation Ground School are not deductible for three reasons: (1) That such courses were taken primarily to enhance Mr. Mason's chances of being employed by a commercial airline; (2) that they constituted expenses for meeting the minimum standards applicable to all pilots in command of a commercial aircraft; and (3) that they qualified Mr. Mason for a new trade or business. The regulations in effect during 1976 require that we use an objective standard in determining whether an educational expenditure is deductible under section 162(a). Boser v. Commissioner, 77 T.C. at 1130. Thus, Mr. Mason's reason for taking the courses which led to his acquiring an FAA airline transport pilot certificate is not relevant. With respect to the Commissioner's second argument, we find that such certificate was not a minimum requirement for Mr. Mason's employment as a pilot with CANG. See sec. 1.162-5(b)(2), Income Tax Regs. An airline transport pilot certificate is issued with respect to a particular aircraft and qualifies the *387 holder to serve as the pilot in command in commercial service for that particular aircraft. See 14 C.F.R. secs. 61.151-61.157, 121.437, 121.443 (1981). The Commissioner concedes that Mr. Mason did not need such a certificate for his employment with CANG, and at the time he began such employment, it is clear that he met the minimum qualifications for such employment. The Commissioner's primary argument is that such courses led to Mr. Mason's acquiring a new trade or business, pilot in command on a commercial aircraft. However, using a commonsense approach, we cannot agree with the Commissioner. The courses Mr. Mason took led to his obtaining an airline transport pilot certificate for the C-130 aircraft, the aircraft he flew for CANG. During 1976, the commercial equivalent of the C-130 was used by some commercial carriers, but such use was very limited. An airline transport pilot certificate is issued only with respect to a particular aircraft, and an individual must retrain to acquire such a license for a different aircraft. See 14 C.F.R. sec. 121.433 *388 (1981). Thus, such courses had little practical value to Mr. Mason other than to improve his proficiency as a pilot on C-130 aircraft. We cannot conclude that each time a pilot obtains an airline transport pilot certificate for a different aircraft that he is engaged in a new trade or business; rather, as the petitioners argue, the obtaining of such a certificate merely maintains or improves existing skills in the same trade or business. See sec. 1.162-5(b)(3) Exs. 3 and 4, Income Tax Regs.; Iglesias v. Commissioner, 76 T.C. 1060 (1981); Voight v. Commissioner, 74 T.C. 82 (1980). Accordingly, we find and hold that the petitioners are entitled to deduct the $ 136.00 paid to Aviation Training Enterprises, Inc., and the $ 200.20 paid to Bill Phelps Aviation Ground School. [3]
Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during 1976, unless otherwise indicated.↩
2. See also Brandt v. Commissioner, T.C. Memo. 1982-180; McElhany v. Commissioner, T.C. Memo. 1981-547↩.
3. If, after 1976, Mr. Mason receives partial reimbursement from the VA for the expenses of taking such courses, it will be necessary to make appropriate adjustments in his tax liability to take into consideration our holding in Manocchio v. Commissioner↩, 78 T.C. (June 14, 1982), and the tax benefit rule.