MICHAEL M. ROSSUM AND MARY O. ROSSUM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rossum v. Commissioner
Docket No. 11594-81.
United States Tax Court
T.C. Memo 1985-593; 1985 Tax Ct. Memo LEXIS 36; 51 T.C.M. (CCH) 55; T.C.M. (RIA) 85593; December 9, 1985. *36 Held: Petitioners' airplane was acquired to qualify petitioner Michael M. Rossum for the position of co-pilot, a new trade or business. Therefore, respondent's disallowance of deductions and an investment credit relating to the airplane is sustained. Robert H. Wiggins, for the petitioners. Claudine Ausness, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1978 in the amount of $5,233. The sole issue involves the disallowance by respondent of an educational expense deduction under section 162 [1] and related investment credit claimed by petitioners with respect to the purchase and operation during the year 1978 of a small airplane. Respondent contends that the expenses were related *37 to fitting Mr. Rossum for a new trade or business and thus are not deductible. For convenience, our Findings of Fact and Opinion are combined. Some of the facts have been stipulated and are so found. At the time the petitioners' case was filed, petitioners were residents of the State of Florida. Petitioners, who are husband and wife, filed a joint income tax return for the calendar year 1978, using the cash method of accounting. Michael M. Rossum (petitioner) became employed by Pan American World Airways, Inc. (Pan Am) in August 1966 and assigned to the position of assistant engineer officer, being promoted to engineer officer in 1967. Prior thereto, petitioner had served in the United States Air Force as a pilot and, at the time he left the Air Force, he was qualified to command a military aircraft identifical to the Boeing 707. When he became employed by Pan Am, he was licensed by the Federal Aviation Administration (FAA) as a commercial pilot with an instrument rating, although *38 he did not then have an air transport pilot's certificate.His intention in going with Pan Am was to be a pilot and the Pan Am appointment memorandum states that he was employed as a pilot but assigned the duties of a filght engineer. By reason of Pan Am's union agreements all persons employed to function as flight engineers were required to be pilots and were treated as pilots under the seniority system applicable to pilots. In order to become a pilot, such a person had to await a pilot or co-pilot vacancy and then pass the necessary tests of pilot proficiency. Except in an emergency, however, a flight engineer even though qualified as a pilot when hired, is prohibited by FAA and Pan Am rules and regulations from flying a plane in passenger service. In 1978, petitioner, by reason of his seniority as a pilot-flight engineer, became qualified for a vacancy in the ranks of co-pilot. He was not required to apply for that vacancy but if he did so and ultimately failed to pass the qualification test, he would be terminated by Pan Am as a pilot-flight engineer and would not be able to return to the position of flight engineer. At that time, petitioner had not kept up his skills as a pilot. *39 Pan Am required all flight engineers attempting to qualify for a position as co-pilot to go through a training program which included flying experience on the particular aircraft to which the individual would be assigned as co-pilot. Following such training the applicant was required to pass proficiency flying tests on a Boeing 707 under the supervision of an FAA inspector, a so-called test ride. It is generally recognized that any pilot, no matter how well trained, who ceases to fly for a number of months rapidly begins to lose the skills required of a commercial airline pilot. This skills can be maintained by flying any small aircraft; it does not have to be maintained by flying an aircraft similar to the commercial aircraft which the individual would be expected to pilot. Petitioner realized that his skills had become rusty and he was afraid that he would not be able to pass the flight test, thereby running the risk of being terminated by Pan Am. Therefore, in 1978 he purchased a small aircraft which he used on a number of occasions to increase his skills as a pilot. Thereafter, in 1978, he took and failed the first test ride but later qualified, and was designated a co-pilot *40 in 1979. He retained the aircraft but did not claim any deductions with respect thereto for any year subsequent to the year 1978. The deductions on petitioners' 1978 income tax return were for depreciation, maintenance, and fuel with respect to the aircraft and an investment credit with respect to its purchase. The duties of pilots and of flight engineers have been fully discussed by this Court in a number of cases and they will not be repeated here. See, e.g., Lund v. Commissioner,46 T.C. 321 (1966); Boser v. Commissioner,77 T.C. 1124 (1981) as amended 79 T.C. II (1982); Mason v. Commissioner,T.C. Memo. 1982-376; Gruman v. Commissioner,T.C. Memo. 1982-388; and McElhany v. Commissioner,T.C. Memo. 1981-547. We have held that the positions of pilot (or co-pilot) and flight engineer are different trades or businesses. McElhany v. Commissioner,supra;Mason v. Commissioner,supra.
We have also held that there is a direct and proximate relationship between piloting a small aircraft and the skills required for employment as a flight engineer for a commercial *41 airline. Hence, the reasonable cost of such flying is a proper educational expenditure deduction. Boser v. Commissioner,supra.However, the issue in this case is whether or not the deductions and investment credit claimed by petitioners were incurred in order to fit petitioner for a different trade or business from petitioner's trade or business when the expenditures were incurred. Petitioners' principal contention is that petitioner was hired by Pan Am as a pilot, that the expenses were incurred to maintain petitioner's flying skills which were required in order to pass the flight test and, therefore, that they were proximately related to petitioner's trade or business of being a pilot and did not qualify petitioner for a new trade or business. This position is justified under the provisions of the union agreements and the fact that petitioner was required to be qualified as a pilot in order to be employed by Pan Am initially. Under respondent's regulations, educational expenses which qualify an individual for a new trade or business are not deductible. Section 1.162-5(b)(3), Income Tax Regs. This regulation establishes an objective test or standard which *42 we must apply to determine whether or not the education qualified petitioner for a new trade or business. Robinson v. Commissioner,78 T.C. 550, 556-557 (1982). The real question on which we must focus is whether petitioner's trade or business in 1978 when he acquired the airplane was that of a pilot, a flight engineer, or both. To determine petitioner's trade or business, we must look to what petitioner was actually doing as distinguished from what he might have been doing with the talents and experience which he held or had previously acquired. Wyatt v. Commissioner,56 T.C. 517 (1971); Owen v. Commissioner,23 T.C. 377 (1954). There can be no disagreement on this record that at the time in question petitioner was performing the duties of a flight engineer which is a different trade or business from that of a pilot or co-pilot. There is also no dispute that the plane was acquired in order to sharpen petitioner's flying skills so that he could qualify for the position of co-pilot which his employer had offered to him. Petitioner himself testified that he had lost some of his flying skills and was concerned that he might not *43 qualify for the co-pilot job and then be terminated by Pan Am. This was the justification for incurring the expenditure. Petitioner was using the airplane to qualify himself for a new trade or business, that of co-pilot. The expenses are not deductible. The fact that regaining skills of a pilot might have the necessary factual connection to performance of the flight engineer's job is, in this case, immaterial. See, e.g., Mason v. Commissioner,supra.Moreover, even if petitioner sought to justify the deductions related to the plane and the investment credit on the basis of his duties as a flight engineer on the authority of Boser v. Commissioner,supra, the deductions and credit claimed in this case would still not be justified. As we held in Boser v. Commissioner,supra, the expenditures must not only be proximately related to the employment responsibilities but they must be reasonable in amount. The acquisition of the airplane can in no sense be justified when, at most, a few hours flying time every 6 months is all that would be reasonable for a flight engineer. There are no facts in this record which we might use *44 to estimate the amount of such a deduction. Therefore, we cannot apply the rule of Cohan[2] here. If petitioners are, in fact, seeking to sustain their deductions and investment credit on this theory, they have not carried their burden of proof. Rule 142. Respondent also contends that some portion of the expense was actually commuting expense or otherwise for the personal benefit of petitioner and therefore not deductible. With respect to the investment credit, respondent also contends that it should be recaptured in the year 1978 even if petitioners were entitled to claim it. We need not focus on these alternatives. For the foregoing reasons, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Cohan v. Commissioner,39 F.2d 540↩ (2d Cir. 1930).