JAMES R. McKIRAHAN, JR. AND PALOMA R. McKIRAHAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McKirahan v. Commissioner
Docket No. 20485-80
United States Tax Court
T.C. Memo 1983-102; 1983 Tax Ct. Memo LEXIS 685; 45 T.C.M. (CCH) 787; T.C.M. (RIA) 83102; February 15, 1983. Armand Grunberger and Jeffrey L. Weiler, for the petitioners. Frank R. DeSantis, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1977 in the amount of $854. We must decide (1) whether operating expenses, including depreciation, of petitioner's airplane constitute ordinary and necessary employee business expenses, (2) whether expenses claimed for the cost of flying lessons are deductible as business education expenses, *686 and (3) whether petitioners are entitled to an investment tax credit in 1977 for their airplane. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly.The stipulation and exhibits attached thereto are incorporated herein by this reference. Petitioners, husband and wife, resided at Richmond Heights, Ohio, at the time they filed the petition in this case. They timely filed a joint Federal income tax return for 1977 with the Internal Revenue Service Center at Cincinnati, Ohio. Paloma R. McKirahan is a petitioner in this case solely because she filed a joint Federal income tax return with her husband. Since the issues before us concern the employee business expenses of James R. McKirahan, all references to petitioner in the singular will refer to him. For taxable year 1977, petitioners claimed employee business expenses in the amount of $3,112.37 for their airplane as follows: *687 1977 Depreciation
$ 889.56
Insurance
526.00
Hangar
630.00
Parts
127.15
Repairs and Labor
373.25
Gas
220.30
Oil
41.88
Charts
35.93
Lessons
148.30
Annual Fee
102.00
Registration
18.00
$3,112.37
After disallowing $148.30 for flying lessons and upon substantiation of increases in other items, respondent arrived at total expenses of $3,517.68 for the operation and maintenance of the airplane. He allowed ten percent of this amount as deductible employee business expenses. Subsequent to the mailing of the notice of deficiency, petitioners filed an amended return for 1977, Form 1040X, in which they claimed an investment credit for the airplane. Petitioner has been employed as a guidance counselor in the Cleveland, Ohio public school system since 1965. In the spring of 1975 a new high school was opened in Cleveland, Aviation High School, which offered vocational training in aviation and aviation mechanics. Petitioner was transferred to the new school in the fall of 1975 and worked there as a guidance counselor up to the time of trial. His duties were equally divided between student recruitment, placement and counseling. He also recruited avionics *688 specialists to teach at the school. In 1977 the Cleveland school system insured petitioner and one other employee under an aircraft liability and pilot accident policy issued by Midwest Underwriters, Inc., to fly three of the school's six airplanes. In 1977 petitioner flew the school's single engine Piper Cherokee on five occasions for school business. He also visited a number of airports on recruitment or placement missions. His practice was to become acquainted with technicians in order to advertise openings for teachers and to acquaint them with the vocational programs the school offered in the hopes of finding jobs for graduates. Mr. McKirahan received his pilot's license in 1968. He was qualified to operate single engine aircraft under conditions of good visibility (VFR). In 1977 he took flying lessons and logged training time to qualify for an instrument rating (IFR) which would permit him to fly in conditions of poor visibility. Although the school did not require him to have an IFR rating, his administrative superiors encouraged him to acquire it. In June 1977 petitioners purchased a used Beechcraft Bonanza airplane for $15,250.In October 1977 petitioner was granted *689 administrative leave to attend the Airplane Owners and Pilots Association (AOPA) convention in Hollywood, Florida. Petitioner, accompanied by his flight instructor, Mr. George Rhodes, flew the Bonanza to Fort Lauderdale, Florida, on October 16 and 17, 1977. Following the convention, petitioner flew to Vero Beach, Florida, with his flight instructor so that Mr. Rhodes could pick up another airplane. Owing to inclement weather, petitioner flew home by commercial airline on October 25. The Bonanza remained in Florida until May 1978. OPINION Section 162(a) allows a deduction for all ordinary and necessary expenses incurred in a trade or business. [2] Section 262 disallows a deduction for personal, living, or family expenses. Section 1.262-1(b)(9), Income Tax Regs., provides that educational expenditures are nondeductible personal expenses unless they qualify under section 162 and regulations thereunder. Section 1.162-5, Income Tax Regs., sets forth objective criteria for distinguishing between business and personal expenditures. In general, *690 it provides that educational expenses are business related if they (1) maintain or improve skills required by an individual in his employment or othe trade or business, or (2) meet the express requirements of an individual's employer in order to retain the taxpayer's employment relationship, status or compensation rate. Petitioners concede that Mr. McKirahan is not required by the Cleveland school board to fly his Beechcraft Bonanza in order to retain his employment as a guidance counselor. However, he contends that hours logged towards the IFR rating and flying lessons maintained or improved skills required by him as a guidance counselor. He further contends that the remaining flight time in the Bonanza was devoted wholly to business purposes.Hence, he claims that all expenses, including depreciation, incurred in operating the airplane are deductible. Respondent, on the other hand, urges that petitioner flew the Bonanza primarily for personal reasons and that none of the flight hours were logged for business purposes. The Commissioner allowed petitioners 10 percent *691 of the claimed deductions in his statutory notice of deficiency. Thus, our task is to determine whether any costs of operating the airplane in excess of 10 percent were deductible as business expenses in 1977. Section 1.162-5(a) does not require a taxpayer to establish the primary purpose for undertaking education. However, we still must decide whether petitioner's expenditures were made to improve skills required in his employment or whether they were for other personal purposes. See Carroll v. Commissioner,51 T.C. 213 (1968), affd. 418 F.2d 91 (7th Cir. 1969). If property is used in part for business purposes and in part for personal purposes, operating expenses and depreciation are deductible only to the extent of the business use. Steen v. Commissioner,508 F.2d 268 (5th Cir. 1975), affg. 61 T.C. 298 (1973). Petitioner divides his flight time in the Bonanza into three categories: the AOPA convention, 8.8 hours; three trips to place students or advertise the school, 3.9 hours; and 20 hours for instrument flight training. *692 [3] Petitioner bears the burden of proving respondent's determination incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Respondent argues that petitioner's flight expenses bear no direct connection to his employment as a guidance counselor. Yet, both Mr. Stephens, the acting principal of Aviation High School, and Dr. Healas, the director of technical vocational education for the Cleveland schools, testified that petitioner's flying was encouraged and needed by the school. Although petitioner might have driven to the nearby airports on his teacher recruitment and student placement missions, Mr. Stephens emphasized the need for petitioner, as one of two certified administrators in the high school, to be in the building as much as possible. Flying to outlying airports consumed less time than driving. While it is clear that Mr. McKirahan's flying the Beechcraft was not absolutely essential to maintaining his skills as a guidance counselor, we find on the record as a whole that petitioners have shown *693 a direct and proximate relationship between Mr. McKirahan's flying and his employment. We believe he should be permitted a deduction to the extent he can show a business purpose for his flights. We are not persuaded that petitioner's attendance at the AOPA convention in 1977 was business related. Although he testified that he attended as a representative of Aviation High School, the school did not reimburse him for any of his expenses, and he had to apply for administrative leave in order to be absent from school. Petitioner testified that hundreds of companies were represented at the convention, yet he offered into evidence no records of his discussions with prospective employers or lists of names of individuals with whom he spoke. We conclude that petitioner has failed to demonstrate a nexus between his job placement responsibilities and his activities at the convention. Regarding the second group of flights allegedly made for school business and student placement activities totaling 3.9 hours, petitioner testified that he flew from Fort Lauderdale, Florida, to Vero Beach, Florida, on October 24, returning on October 25, to transport Mr. Rhodes who was to pick up an airplane *694 in Vero Beach. We view this trip as made primarily for personal reasons, notwithstanding petitioner's statements about his visit to the Piper aircraft factory in Vero Beach. Again, he offered nothing in the way of notes, records, or names to support his assertion that this was a business-related trip. Finally, petitioner offered no evidence, including testimony, to support his statement that he flew the Bonanza on two other occasions for school business. According to petitioner's log, the purpose of one of these flights was to check the brakes on the plane. Petitioner has failed to satisfy his burden of proof regarding these two flights.
Whether education maintains or improves skills required in a taxpayer's employment is a question of fact. [4]Baker v. Commissioner,51 T.C. 243 (1968). Petitioner must establish a direct relation between the flight education and the skills required in his employment as a guidance counselor before the expenses associated with the education are deductible. Carroll v. Commissioner,supra at 218. A precise correlation is unnecessary, and the expenditures need not be for training which is identical to petitioner's *695 prior training so long as it heightens existing employment skills. Boser v. Commissioner,77 T.C. 1124 (1981). [5]
Respondent contends that it was not customary for guidance counselors in the Cleveland City schools to train to fly and that no significant nexus existed between petitioner's business and his IFR training expenses. We disagree. Petitioner was the first guidance counselor in a high school created to produce graduates in avionics. More than one-third of his time was devoted to student placement, involving flights to airports, and teacher recruitment. As one of the school's insured pilots, he flew on school business in a school plane on at least five occasions in 1977. His supervisors deemed it worthwhile that he fly in pursuit of jobs and teachers. Attaining an instrument rating would increase his usefulness to the school *696 since he would not then be restricted to flying in good weather. We think that petitioner has shown a direct connection between Mr. McKirahan's IFR training and the enhancement of his employment skills. [6]
Petitioners have the burden of proving the extent to which they incurred deductible expenses to increase Mr. McKirahan's skills as a guidance counselor. Rule 142(a); Welch v. Helvering,supra. Petitioner groups the remaining 20.5 flight hours under the heading "instrument flight training." We are not inclined to believe, without more of a showing, that every hour not flown for claimed business purposes was an hour devoted to IFR training. In fact, petitioner's log reveals much to the contrary. For example, the first four hours he flew in the Bonanza were noted as "Orientation *697 Beech D-35, take-offs & landings (good), gear down procedure, OK for solo Beech D-35." According to several entries, the purpose of the flights was to practice taking off and landing. The only entries with an IFR notation were those describing three flights petitioner made on October 16 en route to the AOPA convention. Nor was petitioner's testimony helpful on this point which consisted only of vague references to instrument flight training. We think it reasonable to infer that some of the 27 flights logged in the Bonanza in 1977 were made for personal reasons, yet petitioner has made no attempt to distinguish those hours flown for purely personal reasons and those flown for IFR training. Under the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), we may approximate the number of hours that would qualify as IFR training. Weighing heavily against petitioner, we find that 5.3 of the total 33.2 hours he logged in the Boinanza in 1977 were flown for instrument training purposes. Petitioner also claimed in his petition and on brief a deduction of $148.30 for flying lessons. Since the parties did not stipulate to any amount paid for flying lessons and no evidence *698 on such an expenditure was adduced at trial, we sustain respondent's disallowance for lack of substantiation. We have found that approximately 16 percent of petitioner's flight hours in the Bonanza constituted trade or business usage of the plane in 1977. Therefore, petitioner is entitled to a proportionate share of the allowable investment credit in 1977 on the purchase price of the plane (to which he assigned a useful life of 10 years). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Although petitioners claimed attorney's fees in their petition, they abandoned this claim at trial. Nonetheless, it is clear that we are without jurisdiction to award such fees for the year in issue. McQuiston v. Commissioner,78 T.C. 807↩ (1982).
2. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
3. We found an additional half hour in the log for a total of 33.2 flight hours in the Bonanza in 1977.↩
4. The term "required" has been interpreted to mean appropriate or helpful in a taxpayer's business or employment. Commissioner v. Tellier,383 U.S. 687 (1966). Cf. Carlucci v. Commissioner,37 T.C. 695↩ (1962). 5. See also Stoddard v. Commissioner,T.C. Memo. 1982-720↩.
6. Cf. Boser v. Commissioner,77 T.C. 1124↩ (1981), wherein we held that the costs of maintaining a commercial pilot's license with instrument rating improved the employment skills of second officers even though neither the Federal Aviation Administration (FAA) nor the taxpayer's employer required him, as a flight engineer, to keep current such a license and rating.