GORDON L. RAINES and CONNIE E. RAINES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Raines v. Commissioner
Docket No. 21214-80
United States Tax Court
T.C. Memo 1983-125; 1983 Tax Ct. Memo LEXIS 665; 45 T.C.M. (CCH) 940; T.C.M. (RIA) 83125; March 9, 1983. Curtis A. Massey Sr., for the petitioners. Linda J. Wise, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1978 in the amount of $2,576. The sole issue for decision is whether the expenditures made by petitioner Gordon L. Raines in attending a 3-week training course on the flying of a fan-jet Falcon DA-20 aircraft qualify as deductible educational expenses under section 162. [1]
*666 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners Gordon L. Raines and Connie E. Raines, husband and wife, reside in Birmingham, Alabama, at the time of the filing of their petition in this case. Petitioners filed a joint U.S. individual income tax return for the calendar year 1978 with the Internal Revenue Service Center, Atlanta, Georgia. Mr. Raines since 1968 has been employed as a commercial pilot and has since 1976 been employed as a corporate pilot. Mr. Raines has worked as a pilot for small airlines and also for charter operations. As of the date of the trial in this case, Mr. Raines had approximately 9,000 hours of flight time as either a pilot-in-command or as a corporate pilot. Mr. Raines was certified as an Airline Transport Pilot on February 14, 1973. Pilot's certificates are issued by the Federal Aviation Agency (FAA) in the following categories: (1) Airline Transport Pilot, (2) Commercial Pilot, (3) Private Pilot, and (4) Student Pilot. A private pilot may not fly and receive compensation for furnishing his services as a pilot. A commercial pilot, on the other hand, may fly persons for hire and receive compensation *667 for furnishing his services as a pilot. Of these certificates, the Airline Transport Pilot certificate is the highest. With this rating, a pilot can act as pilot-in-command on any scheduled airline or scheduled taxi service in a non-jet aircraft not exceeding 12,500 pounds in gross weight or act as pilot-not-in-command on an aircraft of any weight. However, to act as pilot-in-command on a jet aircraft or on an aircraft weighing in excess of 12,500 pounds on a scheduled airline or scheduled taxi service, in addition to the Airline Transport Pilot certificate, the pilot must have a "type-rating" in the aircraft being flown. Additionally, while a private or commercial pilot may or may not have an instrument flying rating, the FAA requires an airline transport pilot to have such rating. A commercial pilot is authorized to fly cargo for hire or passengers for hire within a 25-mile radius of a particular airport. However, if such commercial pilot works for a licensed nonscheduled air taxi operation, he may fly passengers outside that 25-mile radius. A pilot may fly aircraft for private companies with a commercial license as long as the passengers carried are not being carried "for *668 hire." However, most private companies prefer to have airline transport pilots because of their higher rating and because of the lower insurance rates involved. Mr. raines was employed as a corporate pilot by R.R. Dawson Bridge Co. from August of 1976 to April 1980. The only type of aircraft owned by the company and operated by petitioner in his employment was a KA-200 Beechcraft Turbo Prop aircraft. The KA-200 Beechcraft has two turbo propeller engines. The plane can achieve a high-speed cruise of 333 mph. The plane usually will be used to carry up to a maximum of between six to eight passengers and a crew of two. While the FAA would permit the plane to be flown by only one pilot, Mr. Raines' employer, like most operators, would always have two pilots aboard when the aircraft was flown. These two pilots had definite pilot and co-pilot duties to carry out. The educational expenses at issue were incurred by Mr. Raines in attening a fan-jet Falcon DA-20 type-rating course conducted by an organization known as Flight Safety International in Memphis, Tennessee, from November 27, 1978, to December 17, 1978. The Falcon DA-20 is a twinengine, fan-jet aircraft which holds approximately *669 nine to ten passengers and a crew of two pilots. The plane is primarily used in the transportation of corporate executives. [2] The FAA also requires that the plane have a mandatory crew of two pilots since it is a jet aircraft. In attending the course, Mr. Raines made the following expenditures: Fare for airplane
$ 106.00
Meals and lodging
640.03
Ground school
750.00
Simulator training
3,000.00
Flight training
6,532.50
$11,028.53
In his ground school training, Mr. Raines received comprehensive instruction on the DA-20 aircraft and all of its systems. The systems would include the aircraft's electrical system, hydraulic system, pressurization system, fuel system, and pneumatic system. In the training, Mr. Raines was given instruction not only in how to properly operate the various systems, *670 but also on how to handle malfunctions and remedy them or compensate for them while the aircraft was in flight. The simulator training portion of the course used a full motion visual simulator. The simulator itself was an exact replica of the cockpit of the Falcon DA-20. The simulator allowed one to obtain instrument training in the aircraft and to practice dealing with malfunctions in the different systems of the aircraft in a safe, controlled environment. Mr. Raines prior to taking the course had not been type-rated in a Falcon DA-20. After receiving the training, Mr. Raines was tested and received a Falcon DA-20 type-rating. R.R. Dawson Bridge Co., Mr. Raines' employer, did not own or have plans to purchase a Falcon DA-20 at the time Mr. Raines undertook his training. The company did not require Mr. Raines to attend the Falcon DA-20 type-rating course, nor did it reimburse Mr. Raines for any of the expenses he incurred in attending the course. On their income tax return for 1978 petitioners took a $11,028.53 employee business expense deduction for the various expenditures made by Mr. Raines in attending the course on the Falcon DA-20 aircraft. Respondent in his notice *671 of deficiency disallowed the claimed deduction with the following explanation: (a) The amount of $11,028.53 claimed on your return as employee business expense is disallowed because it has not been established that any amount was for an ordinary or necessary business expense, or was expended for the purpose designated. Therefore, your taxable income is increased $11,028.53. Respondent subsequently agreed that the expenditures were made for the purposes stated on the return and have been substantiated and that only the deductible nature of the entire $11,028.53 amount as an educational expense under section 162 is in issue. Respondent also has abandoned his prior contention that the training course qualified Mr. Raines for a new trade or business. OPINION The sole issue presented for decision is whether the expenditures made by Mr. Raines in attending a training course on the flying of a Falcon DA-20 aircraft qualify as deductible educational expenses under section 162. Petitioners contend that the expenditures here in issue meet all of the requirements for deductibility under section 162. Respondent on the other hand maintains that the education or training Mr. Raines *672 received had no proximate relation to his existing employment. As a part of this argument, respondent contends that the training had only a de minimis effect in improving or maintaining the skills required by Mr. Raines' employment since a Falcon DA-20 aircraft is a markedly different type of plane than the plane flown by Mr. Raines for R.R. Dawson Bridge Co.[3]
Section 162(a) allows a deduction for all the ordinary and necessary expenses paid or incurred by a taxpayer in carrying on any trade or business. Section 262, however, expressly provides that no deduction is allowable for personal, living, or family expenses. Section 1.262-1(b)(9), Income Tax Regs., provides that expenditures made by a taxpayer in obtaining an education or in furthering his education are not deductible unless they qualify under section 162 and section 1.162-5 of respondent's regulations. Section 1.162-5, Income Tax Regs., sets *673 forth objective criteria for deciding whether an educational expense is a business, as opposed to a personal, expense. [4] This regulation provides, with certain exceptions not relevant here, that educational expenses are business expenses if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.
The parties have stipulated that Mr. Raines' employer did not require him to take the training, and it is also clear that the FAA did not require such training for Mr. Raines to retain his position as a corporate pilot. Thus, the dispute between the parties is whether the training in flying of the Falcon DA-20 aircraft maintained or improved the skills required by Mr. Raines in his employment as a corporate pilot.
*674 Whether education maintains or improves skills required by a taxpayer's employment is a question of fact. Boser v. Commissioner,77 T.C. 1124, 1131 (1981). The burden of proof is on petitioners to show that there was a direct and proximate relationship between Mr. Raines' training on a Falcon DA-20 aircraft and skills required in his employment as a corporate pilot for his company. A precise correlation is not necessary, and the educational expenditure need not be for training which is identical to petitioner's prior training so long as it enhances existing employment skills. Boser v. Commissioner,supra at 1131; Schwartz v. Commissioner,69 T.C. 877, 889 (1978). On the record presented, petitioners have carried their burden in showing that the training undertaken by Mr. Raines maintained or improved skills required in his employment. At the trial, Mr. Raines testified that the ground school training concerning the electrical system and the pressurization system of the Falcon DA-20 was especially helpful in his employment. Mr. Raines noted that the pressurization system of the KA-200 Beechcraft is identical to that of the *675 Falcon DA-20. He further elaborated that the electrical system training helped him to differentiate between generator buses that were essential and those which were nonessential. Mr. Raines testified that overall the training course helped improve his judgment as a pilot. Petitioners at the trial also offered the testimony of a witness who was also employed as a corporate pilot. This witness testified that the training Mr. Raines received would be especially helpful in preparing him to deal with emergency situations. Petitioners' witness, although acknowledging that there is a difference in emergency procedures for the Falcon DA-20 and the Beechcraft KA-200, stated that there is a common ground in such emergency procedures. Both Mr. Raines and the other witness were unqualifiedly of the opinion that the instrument training received would improve or maintain skills required by a corporate pilot in his day-to-day employment. Mr. Raines further specifically testified that, based on the crew coordination training he received in the course, upon returning to his company he instituted a similar type of crew coordination training for pilots flying the company's planes. We are unconvinced *676 by respondent's arguments to the contrary that the training would not improve or maintain the skills needed by Mr. Raines in his existing employment. We reject respondent's contention that training in flying a Falcon DA-20 is only of remote benefit in improving or maintaining skills required for piloting a KA-200 Beechcraft. We attach little weight to the testimony given by respondent's witness. This witness gave an opinion to the effect that the training would not have been of much benefit in improving or maintaining the skills needed to fly a KA-200 Beechcraft, but acknowledged that the training would improve a person's general piloting skills. Essentially, respondent's position is that the training would only improve or maintain skills needed in the existing employment if such training was on an aircraft identical to that which would be flown in petitioner's existing employment. In our view, the record clearly shows that there is a direct and proximate relationship between the training taken and the skills required in Mr. Raines' employment as a corporate pilot for his company. We find that the training here in issue either improved or maintained the skills needed by Mr. Raines *677 in his employment with his company. In addition to meeting the requirement that the training or education maintain or improve skills required in the taxpayer's employment, such expenses to be deductible must also meet the ordinary and necessary test of section 162(a). Boser v. Commissioner,supra at 1132. As used in section 162(a), the term "ordinary" has been defined as that which is normal, usual or customary in the taxpayer's trade or business. Deputy v. Du Pont,308 U.S. 488, 495 (1940). The term "necessary" as used in the statute has also been definitively defined to mean that which can be considered appropriate or helpful, not indispensible or required. Ford v. Commissioner,56 T.C. 1300, 1306 (1971), affd. per curiam 487 F.2d 1025 (9th Cir. 1973). That particular training is not required by the taxpayer's employer does not, therefore, prevent such training from being ordinary. Boser v. Commissioner,supra at 1132; Carlucci v. Commissioner,37 T.C. 695, 699-700 (1962). Respondent does not seriously dispute, and the record abundantly shows, that the training here *678 was an ordinary expenditure within the meaning of section 162. Respondent, however, while conceding that the training might be considered helpful or appropriate in one sense, maintains that the amount of the expenditure was unreasonable. Respondent argues that it was unreasonable for petitioner to expend $11,028.53 in order to take a training course when he only earned $20,562.50 for the year 1978 in his employment as a corporate pilot for his company. To the extent that an expenditure is unreasonable, it is not necessary. Boser v. Commissioner, supra at 1133. [5] What is a reasonable expenditure is a question of fact. Commissioner v. Heininger,320 U.S. 467, 475 (1943); Boser v. Commissioner, supra at 1133; Voigt v. Commissioner,74 T.C. 82, 89 (1980). The training Mr. Raines received consisted of ground school training, simulator training and flight training over a 3-week period. The cost appears quite reasonable in light of the nature of the training.
Since the expense of the course is deductible under section 162, the expenses *679 incurred for travel, meals and lodging by petitioner in travel away from home to attend the course are also deductible. Respondent has not contended that any of such expenses were attributable to the pursuit of unrelated personal activities. See section 1.162-5(e), Income Tax Regs. We find that petitioners are entitled to an $11,028.53 deduction under section 162 for the expenses incurred by Mr. Raines in attending the flight training course.
Decision will be entered for the petitioners.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩
2. In addition to being slightly larger, the DA-20, since it is a jet aircraft, is somewhat faster than the turbo-prop KA-200 Beechcraft. The DA-20 is also capable of reaching a slightly higher altitude although the optimum cruising altitude for either aircraft is about the same. The takeoff and landing procedures for either aircraft are substantially similar.↩
3. Respondent is not contending that the training here in issue was required for Mr. Raines to meet the minimum educational requirements of his employment, and respondent has abandoned his prior contention that such training qualified Mr. Raines for a new trade or business.↩
4. As we have recognized, this regulation, by its terms, does not require a taxpayer to establish his primary purpose in undertaking the education. Boser v. Commissioner,77 T.C. 1124, 1130 (1981); Carroll v. Commissioner,51 T.C. 213, 219 (1968), affd. 418 F.2d 91↩ (7th Cir. 1969).
5. See also, Stoddard v. Commissioner,T.C.Memo. 1982-720↩.