ROBERT J. BOSER AND PHYLLIS P. BOSER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8013–79.    Filed November 18, 1981.

Robert J. Boser, pro se.
*Gerald J. Beaudoin,* for the respondent.

SIMPSON, *Judge*: The Commissioner determined a deficiency of $1,106 in the petitioners' Federal income tax for 1976. The sole issue for decision is whether expenses incurred by the petitioners in the operation of a private aircraft are deductible educational expenses.

## FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, Robert J. and Phyllis P. Boser, husband and wife, maintained their legal residence in Redding, Calif., at the time they filed their petition in this case. They timely filed their joint Federal income tax return for 1976 with the Internal Revenue Service Center, Fresno, Calif.

During 1976, Mr. Boser was employed by United Airlines, Inc. (UAL), as a second officer aboard DC–8 aircraft. His home base during such period was San Francisco International Airport (SFI). Mr. Boser has been employed by UAL since 1966; all of his positions with UAL have been as a second officer. At the time of trial, Mr. Boser was a second officer aboard DC–10 aircraft.

A DC–8 is a four-engine, jet-powered aircraft with a cruising speed of 545 miles per hour and a seating capacity of approximately 217 passengers. The flight crew on a DC–8 normally consists of a captain (pilot), first officer (copilot), second officer (flight engineer), and four or five flight attendants. The duties of a second officer aboard UAL jet aircraft include monitoring and cross-checking flight instruments, particularly the pressurization and electrical systems, preflight inspection of the aircraft, flight planning, directing maintenance to system malfunctions, obtaining and transmitting weather reports, chart and map reading, monitoring air traffic control communications, visual scanning outside of the aircraft, instrument scanning, cross-checking the pilot's operation of the aircraft and calling out any deviations he detects. UAL prohibits a second officer from manipulating the controls of its jet aircraft. However, under the UAL crew concept, each crew member, including the second officer, is to be thoroughly familiar with the duties of the other crew members and is to be able to take over such duties in the event of an incapacity.

Generally, in order to be hired as a second officer with UAL, an individual is required to have a commercial pilot's license with instrument rating. However, once such a position is obtained, a second officer is not required, nor does UAL provide the means to keep current such license and rating; the only license required to be kept current by a second officer is a flight engineer's rating. The normal flight work and semian-

nual training given by UAL are the only requirements for retaining such a flight engineer's rating. Neither the Federal Aviation Administration (FAA) nor UAL requires additional training or flying time to maintain a position as a second officer. UAL does not require its second officers to fly light aircraft and neither encourages nor discourages such activity. Flying light aircraft does improve or maintain basic flying skills, but some second officers do not engage in such activity.

The obtaining of a position as a second officer aboard a particular aircraft is based on seniority. UAL provides all training necessary to qualify a second officer to work aboard a particular aircraft. Prior or current experience in flying light aircraft does not affect such training. At UAL, the progression from second officer to first officer is based solely on seniority. When such progression takes place, UAL provides all necessary training to familiarize the second officer with the duties required of a first officer. A second officer who has had recent experience flying light aircraft may find it easier to qualify for a first officer position. However, UAL never trains its flight personnel in light aircraft, except in the case of newly hired second officers.

In April 1976, Mr. Boser purchased a Cessna 210, a high-performance, single-engine, propeller-driven aircraft with a seating capacity of six passengers. Such aircraft has some, but not all, of the instrumentation found on a DC–8 jet aircraft. During 1976, Mr. Boser made approximately 80 flights in the Cessna 210; more than half of such flights were made between his home in Redding, Calif., and SFI. SFI is approximately 215 miles from Redding and is the nearest air traffic control area to Redding. The timing of such flights coincided with his scheduled flight assignments with UAL. Such flights were as shown on page 1128. Prior to purchasing his Cessna aircraft, Mr. Boser commuted between Redding and SFI via Air West.

During 1976, Mr. Boser owned real property, the R-Ranch, in northern California. On the following dates, he flew his Cessna aircraft either to or from such property:

| Date | From | To |
|------|------|-----|
| 7/10 | Benton | R-Ranch |
| 7/10 | R-Ranch | Benton |
| 9/10 | Benton | R-Ranch |
| 9/12 | R-Ranch | Benton |

| 9/24 | Benton | R-Ranch |
| 9/26 | R-Ranch | Benton |
| 11/24 | Benton | R-Ranch |
| 11/26 | R-Ranch | R-Ranch |
| 11/26 | R-Ranch | Yreka |
| 11/26 | Yreka | R-Ranch |
| 11/28 | R-Ranch | Benton |

Mr. Boser also used his Cessna aircraft to fly to Reno, Nev. On some occasions, Mrs. Boser and their friends would accompany Mr. Boser in his Cessna.

In order to maintain his commercial pilot's license with instrument rating, FAA regulations require Mr. Boser to have 6 hours of instrument flight time every 6 months plus three takeoffs and landings in 90 days. In order to maintain his commercial pilot's license without instrument rating, he is required to have three takeoffs and landings in visual conditions within 90 days.

On their 1976 return, the petitioners claimed an educational expense deduction of $3,359.68 in connection with Mr. Boser's operation of his Cessna aircraft. In his notice of deficiency, the Commissioner disallowed such deduction on the ground that Mr. Boser's operation of such aircraft did not maintain or improve the skills required in his employment.

## OPINION

Section 162(a) of the Internal Revenue Code of 1954[1] allows a deduction for "all the ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business." Section 262 expressly disallows a deduction for "personal, living, or family expenses," and section 1.262–1(b)(9), Income Tax Regs., provides that "Expenditures made by a taxpayer in obtaining an education or in furthering his education are not deductible unless they qualify under section 162 and § 1.162–5." Section 1.162–5, Income Tax Regs., sets forth objective criteria for distinguishing between those expenses which are business

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during 1976.

| Cessna flights | | UAL flights | Cessna flights | | UAL flights |
|---|---|---|---|---|---|
| Leave | 6/17 | 6/17 | Leave | 10/16 | 10/17 |
| | | 6/18 | | | 10/18 |
| Return | 6/19 | 6/19 | | | 10/19 |
| | | | Return | 10/20 | 10/20 |
| Leave | 6/24 | 6/24 | | | |
| Return | 6/26 | 6/26 | Leave | 10/24 | 10/25 |
| | | | | | 10/26 |
| Leave | 7/23 | 7/23 | | | 10/27 |
| | | 7/24 | Return | 10/28 | 10/28 |
| Return | 7/25 | 7/25 | | | |
| | | | Leave | 11/4 | 11/4 |
| Leave | 7/30 | 7/30 | | | 11/5 |
| | | 7/31 | | | 11/6 |
| | | 8/2 | | | 11/7 |
| | | 8/3 | Return | 11/8 | 11/8 |
| Return | 8/4 | 8/4 | | | |
| | | | Leave | 11/12 | 11/13 |
| Leave | 8/9 | 8/9 | | | 11/14 |
| | | 8/10 | | | 11/15 |
| Return | 8/11 | 8/11 | Return | 11/17 | 11/16 |
| | | | | | |
| Leave | 8/16 | 8/16 | Leave | 11/20 | 11/21 |
| | | 8/17 | | | 11/22 |
| Return | 8/18 | 8/18 | | | 11/23 |
| | | | Return | 11/24 | 11/24 |
| Leave | 8/23 | 8/23 | | | |
| | | 8/24 | Leave | 11/28 | 11/29 |
| Return | 8/25 | 8/25 | | | 11/30 |
| | | | | | 12/1 |
| Leave | 8/30 | 8/30 | | | 12/2 |
| Return | 9/1 | | Return | 12/6 | 12/3 |
| | | | | | |
| Leave | 9/13 | 9/14 | Leave | 12/14 | 12/14 |
| | | 9/15 | | | 12/15 |
| Return | 9/17 | 9/16 | | | 12/16 |
| | | | | | 12/17 |
| Leave | 9/29 | 9/30 | | | 12/18 |
| | | 10/3 | Return | 12/20 | 12/19 |
| | | 10/4 | | | |
| Return | 10/5 | 10/5 | Leave | 12/23 | 12/24 |
| | | | Return | 12/25 | 12/25 |
| Leave | 10/8 | 10/9 | Leave | 12/28 | 12/29 |
| Return | 10/11 | 10/10 | | | 12/30 |
| | | | Return | 1/1/77 | 12/31 |

expenses and those which are personal expenditures. Such regulations, with certain exceptions not relevant here,[2] provide that educational expenses are business expenses if the education:

(1) maintains or improves skills required by the individual in his employment or other trade or business, or

(2) meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. [Sec. 1.162–5(a), Income Tax Regs.]

The petitioners concede that neither UAL nor the FAA required that Mr. Boser fly his Cessna aircraft in order to retain his position as a second officer. Thus, the sole issue for decision is whether Mr. Boser's operation of his Cessna aircraft maintained or improved the skills required by him in his employment as a second officer.

The petitioners contend that the constant use of automated equipment, such as auto-pilots and flight directors, is detrimental to basic instrument flying skills and that neither the training given by UAL nor that required by the FAA is sufficient to maintain an appropriate level of flying skill. Particularly in the case of a second officer, who is not allowed to manipulate the controls during actual flight and only rarely receives pilot-in-command time during training sessions on a simulator, the petitioners contend that the ability to maintain basic instrument flying skills quickly deteriorates. The petitioners argue that Mr. Boser's job as a second officer required that he maintain such skills, particularly the ability to scan instruments, and that the only way he could practically maintain and improve such skills was to fly light aircraft, such as his Cessna 210. For such reasons, the petitioners contend that their claimed deduction should be allowed as an educational expense. The Commissioner mounts a three-pronged attack on the petitioners' claimed deduction: first, that the petitioners' expenses were not for education since they were not part of a formal program of education; second, that such

---

[2] Such exceptions are for expenditures for education which is required for an individual to meet the minimum educational requirements of his employment or other trade or business or education which qualifies the individual for a new trade or business. The Commissioner does not argue that the petitioners' expenses come within such exceptions.

expenses were not directly or proximately related to Mr. Boser's employment as a second officer; and third, that such expenses were not ordinary and necessary business expenses.

Section 1.162–5(a), Income Tax Regs., provides, in part, that expenses "for education" are deductible as "ordinary and necessary business expenses * * * if the education" meets certain objective criteria. However, such regulation does not define the term "education." In *Lage v. Commissioner*, 52 T.C. 130 (1969), we were asked to determine if an expense was "for education" which improved that petitioner's employment skills. We applied a broad commonsense meaning to the term "education," stating that:

"Education" includes not merely instruction in a school, college, university, or a formally conducted training program, but embraces the acquiring of information and knowledge from a tutor. * * * It is clear that the deduction for educational expenses is not limited to formal or institutional education. * * * [52 T.C. at 134.]

See also sec. 1.162–5(c)(1) and (d), Income Tax Regs. (which allows deductions for refresher and vocational courses and for travel as a form of education). We are satisfied that some of Mr. Boser's flying comes within such interpretation of the term "education."

The thrust of the Commissioner's second and third arguments is that the expenditures of operating the Cessna 210 were primarily incurred for personal reasons—Mr. Boser's desire to fly and to commute to his work—rather than for business reasons, and therefore, such expenditures should be disallowed. The regulations now in effect do not require the taxpayer to establish his primary purpose in undertaking the education. See *Carroll v. Commissioner*, 51 T.C. 213, 219 (1968), affd. 418 F.2d 91 (7th Cir. 1969).[3] However, under the present

[3]The 1958 regulations (T.D. 6291, 1958–1 C.B. 63, 67) provided in part:

(a) Expenditures made by a taxpayer for his education are deductible if they are for education * * * undertaken primarily for the purpose of:

(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or

*   *   *   *   *   *   *

(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of * * * fulfilling the general educational aspirations or other personal purposes of the taxpayer. * * *

Such regulations were amended in 1967 by T.D. 6918, 1967–1 C.B. 36–41. The 1967 regulations are those presently in effect.

regulations, it is still necessary to decide whether the expenditures are for education which maintains or improves skills required by the taxpayer in his employment or other trade or business or whether the expenditures are for other personal purposes. *Carroll v. Commissioner, supra.*

Whether education maintains or improves skills required by the taxpayer's employment is a question of fact. *Baker v. Commissioner,* 51 T.C. 243, 247 (1968). The burden of proof is on the taxpayer. Rule 142(a), Tax Court Rules of Practice and Procedure; *Welch v. Helvering,* 290 U.S. 111 (1933); *Wassenaar v. Commissioner,* 72 T.C. 1195, 1199 (1979). In order to meet such burden, the petitioners must show that there was a direct and proximate relationship between Mr. Boser's piloting of his Cessna aircraft and the skills required in his employment as a second officer with UAL. *Kornhauser v. United States,* 276 U.S. 145, 153 (1928); *Schwartz v. Commissioner,* 69 T.C. 877, 889 (1978); *Carroll v. Commissioner,* 51 T.C. at 218. A precise correlation is not necessary, and the educational expenditure need not be for training which is identical to the petitioner's prior training so long as it enhances existing employment skills. *Schwartz v. Commissioner, supra; Lund v. Commissioner,* 46 T.C. 321, 331–332 (1966).

Although UAL prohibits a second officer from manipulating the controls of its jet aircraft, the UAL crew concept requires that each crew member be aware of the duties of the other crew members. The petitioner and his expert witness, a flight instructor for UAL, testified that flying light aircraft, such as Mr. Boser's Cessna, would improve the basic flying skills of all flight personnel, including second officers. On the other hand, neither the FAA nor UAL required second officers to have such experience, and some second officers did no such flying. Thus, the record makes clear that the experience of Mr. Boser in flying his Cessna aircraft was not absolutely essential to the maintenance of his skills as a second officer, but on the record as a whole, we find that the petitioners have shown a direct and proximate relationship between Mr. Boser's piloting of his Cessna aircraft and his employment skills as a second officer.

Moreover, in *Lund v. Commissioner, supra,* we held that the cost of obtaining a commercial pilot's license with instrument rating improved the employment skills of second officers. That case implicitly recognized that keeping such license current

would assist in maintaining such skills. 46 T.C. at 328. Although, in *Lund*, such license was also obtained to meet the express requirement of the employer, such case supports the proposition that there is a direct and proximate relationship between the piloting of light aircraft and the employment skills required of a second officer.

The petitioners argue that since the flight training of Mr. Boser maintained or improved skills required in his employment within the meaning of section 1.162–5, Income Tax Regs., his expenses are deductible and that such expenses are not required to meet the ordinary and necessary test of section 162(a). Such is not the law. *Ford v. Commissioner*, 56 T.C. 1300, 1305–1307, affd. per curiam 487 F.2d 1025 (9th Cir. 1973); sec. 1.262–1(b)(9), Income Tax Regs. ("Expenditures * * * are not deductible unless they qualify under section 162 *and* § 1.162–5 * * * .") (Emphasis added.)

As used in section 162(a), "ordinary" has been defined as that which is "normal, usual, or customary" in the taxpayer's trade or business. *Deputy v. du Pont*, 308 U.S. 488, 495 (1940). The Commissioner argues that since UAL does not require its second officers to pilot light aircraft and that piloting such aircraft does not affect the training UAL gives to its second officers, we should conclude that such flight experience is not necessary to the duties of a second officer. We disagree.

That a particular activity is not required by the taxpayer's employer does not prevent such activity from being ordinary. See *Carlucci v. Commissioner*, 37 T.C. 695 (1962). From Mr. Boser's perspective, his basic flying skills had deteriorated and would have continued to deteriorate if he had not obtained light aircraft experience. Mr. Boser and his expert witness testified that those second officers who had such experience were better able to perform their employment duties and provided a safer environment than those second officers who did not have such experience. Under the circumstances, we believe that Mr. Boser's piloting of his Cessna aircraft was an ordinary expenditure within the meaning of section 162.

"Necessary" has been construed to mean "appropriate" or "helpful," not "indispensable" or "required." *Ford v. Commissioner*, 56 T.C. at 1306. The record clearly shows that piloting of light aircraft, although not required by UAL, was "helpful" in maintaining and improving basic flying skills required of a

second officer, particularly the ability to scan instruments. However, a requirement inherent in the concept of "necessary" is that any payment asserted to be allowable as a deduction must be reasonable in relation to its purpose. To the extent that an expense is unreasonable, it is not necessary. In such case, only the portion which was reasonable is deductible under section 162. *United States v. Haskel Engineering & Supply Co.*, 380 F.2d 786, 788–789 (9th Cir. 1967).

What is a reasonable expenditure is a question of fact. *Commissioner v. Heininger*, 320 U.S. 467, 475 (1943); *Voigt v. Commissioner*, 74 T.C. 82, 89 (1980). Apparently, the petitioners have assumed that all of Mr. Boser's flying was reasonable, but such assumption is clearly not warranted. Had Mr. Boser's sole objective been to secure the flying experience needed to maintain his skills, such experience could have been secured much more simply and less expensively by merely renting a plane from time to time. Moreover, Mr. Boser chose to live approximately 215 miles from SFI, his place of employment, and on examination of the record of Mr. Boser's flights in his Cessna aircraft shows that most of the flights were to or from SFI and coincided with his UAL flights in and out of that city; thus, most of the Cessna aircraft flights provided commuting for Mr. Boser from his home in Redding to SFI. In addition, the record shows that other flights were made to his property, the R-Ranch, and for other personal purposes. Expenditures for commuting and for other personal trips are clearly nondeductible personal expenses. Sec. 262; sec. 1.262–1(b)(5), Income Tax Regs.; *Fausner v. Commissioner*, 413 U.S. 838 (1973); *Steinhort v. Commissioner*, 335 F.2d 496, 503 (5th Cir. 1964), affg. on this issue a Memorandum Opinion of this Court; *Foote v. Commissioner*, 67 T.C. 1, 6 (1976).[4] To the extent that the expenses of operating the Cessna aircraft were attributable to such purposes, such expenses are not deductible.

The petitioners have the burden of proving the extent to which they incurred deductible expenses for maintaining or improving Mr. Boser's skills relating to his employment as a second officer. Rule 142(a), Tax Court Rules of Practice and Procedure; *Welch v. Helvering, supra*. It is clear that not all of his flying of the Cessna aircraft was necessary for such

---

[4]See also *Fausner v. Commissioner*, T.C. Memo. 1979–348.

purpose, and they have offered no evidence showing what portion of his flying was reasonably related to the maintenance of such skills. Under the circumstances, any doubts must be resolved against them. *Cohan v. Commissioner*, 39 F.2d 540, 543–544 (2d Cir. 1930); see *Hoover v. Commissioner*, 35 T.C. 566 (1961). On this record, we have concluded that the FAA regulations as to the minimum requirements for keeping current a commercial pilot's license with instrument rating may be used as a basis for computing the deductible expenses. Accordingly, we find and hold that the expenses of 6 hours of instrument flight time every 6 months, a total of 12 hours of instrument flight time during 1976, were reasonable under the circumstances.[5] See *Lund v. Commissioner*, 46 T.C. at 328. We find and hold that the expenses for the balance of such flight time were nondeductible personal expenditures. See sec. 262; sec. 1.262–1(b)(9), Income Tax Regs.; *Fausner v. Commissioner*, 413 U.S. at 839.

*Decision will be entered under Rule 155.*

[5]We believe that a proper allocation would be based on the fair rental value of Mr. Boser's Cessna, or a similar aircraft, for the 12 hours of instrument flight time.