ROGER ELI FERRIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ferris v. Commissioner
Docket No. 4700-85.
United States Tax Court
T.C. Memo 1986-32; 1986 Tax Ct. Memo LEXIS 573; 51 T.C.M. (CCH) 335; T.C.M. (RIA) 86032; January 27, 1986. Roger Eli Ferris, pro se. Michael Kevin Phalin, for respondent. AARONS
MEMORANDUM FINDINGS OF FACT AND OPINION AARONS, Special Trial Judge: This case was assigned to Special Trial Judge Aarons pursuant to section 7456(d)(3) and Rules 180, 181 and 182 [1]. Respondent determined a deficiency in petitioner's 1981 Federal income tax in the amount of $3,365. After concessions by both parties reflected in the Stipulation of Facts, the remaining issues *574 are the deductibility as ordinary and necessary business expenses of pilot proficiency expenses, disability insurance premiums and certain checking account charges. Also involved is the availability of a claimed investment tax credit. FINDINGS OF FACT To the extent stipulated, the facts are so found. At the time his petition was filed, petitioner resided in Blue Jay, California. He still resides there. Petitioner is an airline transport pilot employed by Western Airlines. He is rated by the Federal Aviation Administration (FAA) as qualified to fly DC-10's, B-737's, B-727's and single engine planes, his last increase in rating having occurred in 1978. In 1979, petitioner purchased a Cessna 310P which he owned and used during 1981. In 1981, petitioner purchased various new and used navigation and other instruments for the Cessna, which are the subject of the investment tax credit herein at issue. In 1981, petitioner flew the Cessna 15.8 hours on local flights and 21.4 hours cross-country for a total of 37.2 hours. Although the record is not wholly clear as to the purpose of some of the local flights, the Court finds that the local flights were primarily for various types *575 of flying practice. The cross-country flights, except as noted below, were from airports in the Los Angeles area either to Las Vegas or Reno, Nevada, and return to the Los Angeles area. Petitioner owned a home in Las Vegas and had lived there previously with his former wife. Petitioner traveled to Reno to try to work out a potential partnership arrangement, the nature of which is not apparent from the record. Petitioner was not required by his employer or by the FAA to own his own aircraft or to engage in private flying. However, petitioner's flying proficiency was refreshed and maintained by his use of a smaller aircraft. Because of the extremely high degree of automation in the large commercial aircraft, there is some risk of a pilot losing the "feel" for flying which he finds in a smaller aircraft. Petitioner could have flown free or at a reduced price from Los Angeles to Las Vegas or Reno and return on commercial flights but chose to use his Cessna. The Court finds that although petitioner derived some proficiency benefit from those "cross-country" trips, his primary purpose was to "get there" for personal reasons (in the case of Las Vegas) or investigating the possibility *576 of a new partnership (in the case of Reno). One of the cross-country flights, of 1.7 hours duration, was for the purpose of practicing night landings and was primarily for proficiency purposes. The "Pilot Proficiency Expenses" claimed by petitioner on his 1981 return were: Aircraft Depreciation
$13,014.37
Hanger Rental
1,419.65
Fuels
1,530.72
Maintenance/Repair
1,697.77
Taxes
139.37
Miscellaneous
3,692.89
Parts/Material
282.02
Books/Manuals
Inspections
672.18
Insurance
1,463.00
Total Expense
$23,911.97
In addition, petitioner claimed as business expense $20 (representing half of his checking account charges); disability insurance premiums of $818 (a "flight officers' disability income" policy providing for a monthly benefit of $1,000 in case of total disability); and an investment tax credit on the instruments installed in the Cessna in the amount of $656. None of the dollar amounts are in dispute. Respondent has disallowed these items because they assertedly are not sufficiently related to a trade or business carried on by petitioner. OPINION For the reasons set forth fully in Boser v. Commissioner,77 T.C. 1124 (1981), *577 affd. in an unpublished opinion (9th Cir., December 22, 1983), [2] which we need not spell out again here, we think it is clear that some of the expenses relating to petitioner's operation of the Cessna come within the meaning of the term "education" as used in section 1.162-5(a), Income Tax Regs., and further that this type of expense meets the "ordinary" requirement of section 162. The obstacle confronting petitioner, as in Boser v. Commissioner,supra, is satisfying the "necessary" requirement of section 162. As set forth in that case at page 1133: To the extent that an expense is unreasonable, it is not necessary. In such case, only the portion which was reasonable is deductible under section 162. United States v. Haskel Engineering & Supply Co.,380 F.2d 786, 788-789 (9th Cir. 1967). *578 Petitioner has the burden of proving the extent to which he incurred expenses for maintaining his proficiency. Rule 142(a). As set forth in our Findings of Fact, petitioner has not persuaded the Court that the cross-country trips to Las Vegas were other than primarily personal. Nor is the Court satisfied that Reno cross-country trips were for a primary purpose other than investigating the possibility of a new, and unidentified, partnership. Taking into account the 1.7 hours of cross-country flying that the Court finds were for practice flying, this leaves petitioner with a total of 19.7 hours in 1981 of primarily personal flying time in the Cessna and a maximum of 17.5 hours of primarily proficiency flying time in that year. As the Court concluded in Boser v. Commissioner,supra, we conclude here that, although petitioner is entitled to an educational expense deduction under section 162, such deduction is to be based on an allocation of actual expenses, plus depreciation, between business use of 17.5 hours, and the total hours petitioner flew his aircraft during 1981, i.e. 37.2 hours. This amount should be agreed upon by the parties in the Rule 155 computation. *579 We further hold that the claimed investment tax credit in the amount of $818 should be allowed in the same proportion as 17.5 hours bears to 37.2 hours. Respondent's disallowance of the disability insurance premiums must be sustained under Blaess v. Commissioner,28 T.C. 710 (1957), followed in Andrews v. Commissioner,T.C. Memo. 1970-32. Each of these cases held that premiums on similar policies were not deductible business expenses under section 162. The Court has considered whether such premiums might qualify as a medical expense under section 213. However, petitioner listed no medical expense on his return, nor does he claim such premiums as a medical deduction. See, in this connection, section 1.213-1(e)(4)(i)(a), Income Tax Regs., denying deductibility under section 213 of premiums on policies providing an indemnity for loss of income. With respect to the $20 item representing a portion of petitioner's checking account charges, the record contains no evidence sufficient to carry petitioner's burden of proof. Rule 142(a). To reflect the foregoing conclusions, as well as the concessions of the parties, *580 Decision will be entered under Rule 155.
Footnotes
1. Section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Footnote 5 in Boser v. Commissioner,77 T.C. at 1134↩, which is relevant to the instant case, was modified by an Erratum notice at 79 T.C. II (1982).