T.C. Memo. 2002-199

UNITED STATES TAX COURT

ROBERT M. AND NANCY I. STEWART, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 365-01.                     Filed August 8, 2002.

<u>Martin Brant Fenster</u>, for petitioners.

<u>Matthew A. Mendizabal</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined deficiencies of $35,106
and $36,999 in petitioners' Federal income taxes, and accuracy-
related penalties under section 6662(a)[1] of $6,753 and $7,400,

_____

[1]All section references are to the Internal Revenue Code in
effect for the years at issue.  All Rule references are to the
Tax Court Rules of Practice and Procedure.

for 1995 and 1996, respectively. After concessions,[2] the issue

for decision is whether petitioners are entitled to deductions

for certain amounts that Mr. Stewart paid to a wholly owned

corporation for general management services he performed.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

The stipulation of facts and the attached exhibits are

incorporated herein by this reference. At the time of filing the

petition, petitioners resided in San Jose, California.

Petitioner Robert M. Stewart owned a real estate business,

which he operated as a sole proprietorship. In 1984, Mr. Stewart

incorporated R.M. Stewart, Inc., and he was its sole shareholder

and director. The corporation was formed to protect the assets

of the sole proprietorship, including the real estate sales

office.[3] It was engaged in real estate development, a screen

printing sign business, and the operation of a computer company.

---

[2]Petitioners concede the adjustment to car and truck expenses of $4,313 and the adjustment to interest expense of $3,430 for 1995; respondent concedes the adjustment to rent expense of $1,735 for 1995 and $20,000 of the adjustment for commission expenses for 1996.

[3]The corporation also provided property management services to certain clients of the sole proprietorship. The clients were required to list their properties with the sole proprietorship when and if the properties came up for sale. The sole proprietorship was prohibited by its franchise agreements from performing those services. The corporation paid a property manager for managing the various rental properties involved; however, he did not provide general management services for either the corporation or the sole proprietorship.

The sign business and the computer company sold products to the general public. The corporation held real estate, and it provided management services to the sign business and the computer company.

In December 1984, R.M. Stewart, Inc., and Mr. Stewart entered into a management agreement, which provided:

> The purpose of this agreement is to establish a management agreement for Robert M Stewart's real estate business. R M Stewart Inc is by this agreement to have full management control over the real estate office located at 2698 Berryessa Road San Jose.
>
> R M Stewart Inc is to be paid a [sic] annual retainer of $48,000 which is not to exceed 70% of the net profit before taxes. If the annual fees are not paid due to capital improvements or expansion, than [sic] the short fall may carry forward upto two full calendar years.
>
> This agreement is to be reviewed every three years or sooner.
>
> * * * [Signed Robert M. Stewart] * * *
> For both R M Stewart Inc and Robert M Stewart

Mr. Stewart executed four subsequent addendums to this agreement. In December 1987, the annual retainer was raised to $84,000; in December 1990, the annual retainer was raised to $120,000. In December 1993 and in December 1996, addendums were executed providing that "all terms and conditions to remain the same." There was no independent third party involved in the contract, and no party other than Mr. Stewart signed the contract or the addendums.

The general management of the sole proprietorship consisted of running the company, overseeing the training of the managers, overseeing the sales manager, overseeing accounts receivable and accounts payable, motivating agents, and reviewing contracts for residences and businesses. Mr. Stewart performed the general management functions for the sole proprietorship in 1995 and 1996. There was no written agreement between the corporation and Mr. Stewart regarding any services he was to provide as an employee of the corporation.

Mr. Stewart paid $120,000 in 1995, and $100,000 in 1996, to R.M. Stewart, Inc., as fees for the general management services. Petitioners filed Forms 1040, U.S. Individual Income Tax Return, in 1995 and 1996, in which they deducted those payments on Schedules C, Profit or (Loss) from Business or Profession, attached to those returns. The corporation reported those amounts as income on its Forms 1120, U.S. Corporation Income Tax Return, for 1995 and 1996. This income allowed the corporation to absorb losses arising from deductions claimed on its 1995 and 1996 returns. Mr. Stewart received no compensation or draws from the corporation in 1995 and 1996.

## OPINION

Section 162(a) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business including a reasonable

allowance for salaries or other compensation for personal services actually rendered.  Deductions are a matter of legislative grace, and the burden of clearly showing the right to any such deductions is on the taxpayer.[4]  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Respondent determined that the amounts paid to R.M. Stewart, Inc., as "management fees" were not ordinary and necessary business expenses or were not expended for the purpose designated.[5]  Petitioners argue that the management fees were ordinary and necessary expenses of Mr. Stewart's real estate business.  They contend that the type of services provided to the real estate business involved "classic ordinary and necessary business expenses" and that they were provided pursuant to a binding and written contract.  Petitioners suggest that R.M. Stewart, Inc., performed those services as a separate taxable entity.

Ordinary expenses arise from transactions that are "of common or frequent occurrence in the type of business involved." Deputy v. DuPont, 308 U.S. 488, 495 (1940); ASAT, Inc. v. Commissioner, 108 T.C. 147, 174 (1997).  Necessary expenses are

---

[4]Respondent submits that the examination of petitioners' 1995 and 1996 returns began on Mar. 21, 1997.  Petitioners do not raise an issue as to the application of sec. 7491, and we find that Code section inapplicable to this case.

[5]Respondent suggests that the fees were essentially capital contributions from Mr. Stewart to the corporation.

expenses that are "appropriate and helpful" to a taxpayer's trade or business. Welch v. Helvering, 290 U.S. 111, 113 (1933); Boser v. Commissioner, 77 T.C. 1124, 1132 (1981), affd. without published opinion (9th Cir., Dec. 22, 1983). We agree with petitioners that the general management services provided to the real estate business were ordinary and necessary to that business. We also agree that Mr. Stewart incorporated R.M. Stewart, Inc., for legitimate business reasons and that it was a separate taxable entity. See Moline Props., Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943). However, we disagree that the payments to R.M. Stewart, Inc., were expenses paid for management services performed by that entity or its employees.

As a general matter, the income and expenses of a sole proprietorship are the income and expenses of the individual who owns the business. See sec. 61(a)(2); LeBouef v. Commissioner, T.C. Memo. 2001-261. The sole proprietorship, unlike the corporation, was not a separate taxable entity from Mr. Stewart, and any payments from that business that were paid for services Mr. Stewart performed in his individual capacity are not deductible. Thus, it is essential that the corporation in the first instance, and not Mr. Stewart, be viewed as the party providing the general management services.

Mr. Stewart was the individual who actually performed the general management services for his sole proprietorship during

the years at issue. Mr. Stewart has not shown that he performed those services as an employee or independent contractor of the corporation. Mr. Stewart was not paid by the corporation as an employee, independent contractor, or executive in 1995 and 1996, and it does not appear that the corporation ever compensated him for the general management services he performed in 1995 and 1996. There was no employment agreement between Mr. Stewart and the corporation, and there are otherwise no records which show Mr. Stewart provided the services in any capacity as an employee of the corporation. Also, there is no documentation showing the number of hours that Mr. Stewart spent providing the management services to the sole proprietorship. There is no reasonable basis to distinguish the services that Mr. Stewart provided generally to his sole proprietorship and those that he might have performed through the corporation. And, there is no reasonable basis for us to find that the corporation or any of its employees actually rendered services to the sole proprietorship in 1995 and 1996.

Petitioners point to the management fee agreement between Mr. Stewart and the corporation. The agreement does not specify or otherwise describe the management services to be performed by the corporation, and the "annual retainer" does not relate to any services actually to be rendered by the corporation. The agreement was not the product of arm's-length negotiations. The

agreement was executed and signed solely by Mr. Stewart in his individual capacity and as the only shareholder and director of R.M. Stewart, Inc. The payments under the agreement are capped, and they are not payable in the case of capital improvements or expansion.

Transactions among related taxpayers are subject to close scrutiny, and, in these circumstances, "it is the nature and origin of a transaction, rather than its form, that must be accorded controlling weight." Tulia Feedlot, Inc. v. United States, 513 F.2d 800, 805 (5th Cir. 1975); Pan Am. Foods, Inc. v. Commissioner, T.C. Memo. 1997-136, affd. 163 F.3d 1354 (5th Cir. 1998). Petitioners have not shown that the corporation rendered any general management services to the sole proprietorship, and we cannot agree that Mr. Stewart's payments of $120,000 in 1995 and $100,000 in 1996 to that entity as compensation for those services are deductible business expenses. Accordingly, we sustain respondent's determination.

Respondent also determined accuracy-related penalties for 1995 and 1996. An accuracy-related penalty of 20 percent is imposed on any portion of an underpayment of tax that is attributable to negligence or to any substantial understatement of income tax. Sec. 6662(a) and (b).

There is a substantial understatement of income tax if the amount of the understatement for the taxable year exceeds the

greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A). An understatement is the excess of the tax required to be shown on a return for the taxable year over the amount of the tax imposed which is shown on the return. Sec. 6662(d)(2)(A). The understatement is reduced where the taxpayer has substantial authority for his tax treatment of any items or where the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return and there is a reasonable basis for such tax treatment. Sec. 6662(d)(2)(B). Petitioners rely on section 162 and section 1.162-1, Income Tax Regs., as substantial authority for taking their deductions; however, given the particular circumstances of this case, we cannot agree that those authorities represent substantial authority for petitioners' deductions. Further, simply claiming the deductions on the Schedules C attached to their 1995 and 1996 returns does not constitute adequate disclosure. Petitioners did not disclose any relevant facts or attach any statement to their returns. We find a substantial understatement of income tax in this case.

The accuracy-related penalty is not imposed if the taxpayer shows there was a reasonable cause for the underpayment and that he acted in good faith with respect to the underpayment. Sec. 6664(c)(1). Mr. Stewart was previously audited by respondent for

his 1985 tax year, and, on June 9, 1987, respondent issued a no-change letter.  Petitioners claim that they reasonably relied on this letter in claiming the deductions in 1995 and 1996.

A failure by the Commissioner to disallow similar deductions in a prior year's audit of a taxpayer's return may be a factor to be considered with respect to the imposition of the accuracy-related penalty.  Sheehy v. Commissioner, T.C. Memo. 1996-334. However, petitioners have produced no evidence regarding the circumstances of the previous year's audit and whether they claimed deductions on a similar basis as in their 1995 and 1996 returns.  The no-change letter they produced is silent regarding the circumstances of the audit, and the facts in 1985 are not necessarily comparable to those that existed in 1995 and 1996. We hold that petitioners have not shown reasonable reliance on respondent's no-change letter.  We sustain the accuracy-related penalties as determined.

Decision will be
entered under Rule 155.