T.C. Memo. 2013-229

UNITED STATES TAX COURT

JOSEPH D. SCULLY, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17784-10.                          Filed September 30, 2013.

Joseph D. Scully, Jr., pro se.

Thomas D. Yang, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  On August 9, 2010, petitioner filed a petition with the Court

for redetermination of Federal income tax deficiencies.  In the notice of deficiency

respondent determined that petitioner owed deficiencies of $4,535, $5,163,

$5,969, and $2,867 for the 2002, 2003, 2004, and 2006 tax years, respectively.

**[*2]** Respondent also determined petitioner was liable for accuracy-related penalties under section 6662(a) of $907, $1,032.60, $1,193.80, and $573.40 for the 2002, 2003, 2004, and 2006 tax years, respectively.[1] In addition, respondent determined petitioner was liable for additions to tax under section 6651(a)(1) of $1,133.75, $1,350.53, $1,468.65 for the tax years 2002, 2003, and 2004, respectively.

Petitioner conceded certain issues by introducing proposed amended returns into the trial record that align with respondent's determinations.[2] After concessions by the parties, the issues left for decision are: (1) whether petitioner is entitled to unreimbursed employee expense deductions claimed on Schedules A, Itemized Deductions, for tax years 2002, 2003, 2004, and 2006; (2) whether petitioner is entitled to additional deductions claimed on Schedules C, Profit or Loss From Business, for tax years 2003, 2004, and 2006; (3) whether petitioner is

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue.

[2]Through the positions taken on petitioner's proposed amended Federal tax returns, the following issues reflected agreement with the notice of deficiency and are deemed conceded: wage and nonemployee compensation in tax years 2002, 2003, 2004, and 2006; capital gain from the sale of real estate in the 2002 tax year; interest income in the 2002 and 2006 tax years; and a State income tax refund in the 2004 tax year.

[*3] liable for section 6651(a)(1) additions to tax for the 2002, 2003, and 2004 tax years; and (4) whether petitioner is liable for the section 6662(a) penalties for tax years 2002, 2003, 2004, and 2006.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Illinois when the petition was filed.

Petitioner, who also uses the stage name Yosef Ben Israel,[3] was a jazz musician and music professor for all the tax years in issue. Petitioner taught various music classes for the City Colleges of Chicago, and he has been involved with music education for over 30 years. Each of his classes had a jazz component or module integrated in the curriculum. Petitioner's method of teaching included weaving firsthand knowledge and experiences into the academic content. He incorporated specific details and knowledge about music into his class lessons. Petitioner's firsthand experience came from playing the upright bass with various ensembles and traveling throughout the United States to participate in jazz conferences.

---

[3]Petitioner legally changed his name to Yosef Ben Israel after the years at issue.

[*4] Through decades of hard work and practice petitioner has become a respected musician and teacher. He has been featured in various music publications alongside well-known performers such as Ella Fitzgerald, Muddy Waters, and many others. Petitioner was pursuing a doctorate degree in music during the tax years at issue--a rarely pursued degree in music academia. Further, petitioner was named a distinguished professor for his work at the City Colleges of Chicago.

In order to achieve such prestige, petitioner would travel several days a week to rehearsals and performances (performance activities) to stay abreast of developments in the music profession.[4] Petitioner's performance activities also helped him maintain the facilities and know-how to perform with other well-known musicians. Petitioner claimed deductions for driving miles in relation to his performance activities both as Schedule C business expenses and as Schedule A unreimbursed employee expenses. Petitioner owned several cars and tracked his miles by logging the date, location visited, and activity at each location. He maintained a mileage log for each of the years in issue, but a flood destroyed the logs for tax years 2002, 2003, and 2004; the mileage log for 2006 was not destroyed. Petitioner used his 2006 log as a backbone to reconstruct the driving

---

[4]Petitioner was compensated for some, but not all, of his jazz performances.

[*5] logs for his 2002, 2003, and 2004 tax years. Petitioner did not remember whether he had submitted any requests to be reimbursed for these expenses to the City Colleges of Chicago.

Respondent allowed petitioner certain travel expense deductions for music events on his Schedules C, but did not allow any travel expenses as unreimbursed employee expense deductions on his Schedules A.

Petitioner did not timely file returns for 2002, 2003, 2004, and 2006. Petitioner filed returns for all four years at issue between May 16 and June 8, 2007.[5] During petitioner's audit, he submitted draft amended returns to respondent for tax years 2003, 2004, and 2006. Respondent did not accept petitioner's legal positions taken on his draft amended returns. The third supplemental stipulation of facts included petitioner's proposed amended returns for tax years 2002, 2003, 2004, and 2006. The proposed amended returns are the most recent and complete documents outlining petitioner's legal position.

OPINION

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or

---

[5]Respondent determined additions to tax for failure to timely file tax returns under sec. 6651(a)(1) for petitioner's 2002, 2003, and 2004 tax years.

**[\*6]** business.  Generally, no deduction is allowed for personal, living, or family

expenses, nor for expenditures that are properly categorized as capital

expenditures.  See secs. 262 and 263.  The taxpayer bears the burden of proving

that he or she is entitled to any deduction.  See Rule 142(a); Welch v. Helvering,

290 U.S. 111 (1933).

As noted above, petitioner submitted proposed amended returns to the Court

at trial.  These proposed amended returns were not filed as amended returns with

respondent but instead reflect petitioner's tax positions at trial and will be used to

extrapolate his legal position.  Petitioner variously:  (1) maintained positions taken

on his originally filed returns; (2) conceded some of respondent's changes; and (3)

asserted positions new or different from those originally taken.

A.  Schedule A Unreimbursed Employee Expenses

Petitioner conceded some of the adjustments for Schedule A unreimbursed

employee expense deductions that he had claimed but maintains he is still entitled

to Schedule A deductions of $12,032, $12,275, $12,919, and $16,216 for tax years

2002, 2003, 2004, and 2006, respectively.[6]  These amounts are reflected on

petitioner's proposed amended returns.  For all tax years in issue, petitioner's

_____

[6]Petitioner originally claimed Schedule A deductions of $20,937.50,
$28,387.78, $29,557.13 and $21,792.22 on his filed tax returns for tax years 2002,
2003, 2004, and 2006, respectively.

**[*7]** unreimbursed employee expenses were for: (1) vehicle expenses; (2) parking fees, tolls, and transportation costs not involving overnight travel; (3) travel expenses; (4) other business expenses; and (5) meals and entertainment. Petitioner must substantiate his deductions with sufficient evidence. See sec. 1.6001-1(a), Income Tax Regs.

Petitioner failed to substantiate any parking fees, tolls, and transportation costs not involving overnight travel; travel expenses; other business expenses; or meals and entertainment. Petitioner did not offer any testimony--much less conclusive evidence--to support any of these deductions. Accordingly, respondent's determinations are sustained for deductions relating to: parking fees, tolls and transportation costs not involving overnight travel; travel expenses; other business expenses; and meals and entertainment.

Petitioner incurred the vehicle expenses while traveling to rehearsal sessions, performances and music conferences. Petitioner also claimed an unreimbursed employee expense deduction of $464 for union dues for tax year 2003. This same amount was included in petitioner's 2003 Schedule C under the other expenses category. Petitioner cannot deduct the same expense twice, and the union dues shall be allowed only as a Schedule C deduction.

[*8]   In general, an individual may not deduct his or her personal, living, or family expenses.  Sec. 262(a).  Section 162 limits business expenses to ordinary and necessary expenses paid or incurred in carrying on any trade or business.  An individual may be in the trade or business of being an employee, and ordinary and necessary expenses incurred in that trade or business are deductible under section 162.  O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988); Kurkjian v. Commissioner, 65 T.C. 862, 869 (1976); sec. 1.162-17(a), Income Tax Regs.

Petitioner's claimed vehicle expense deductions were all for performance activities, and most of the trips were around the Chicago area.  He claimed miles for rehearsals, performances, and conferences but not the miles he drove from home to the City Colleges of Chicago where he taught.  Petitioner was not deducting personal commuting expenses, but only expenses that he considered to be connected with his professional activities.[7]

Section 1.162-5(a), Income Tax Regs., permits a deduction for education expenses that (1) maintain or improve skills required by the taxpayer in his employment, or (2) meet the express requirements of the taxpayer's employer, or of applicable law or regulations, imposed as a condition to the retention by the

---

[7]As discussed below, some of the miles claimed on petitioner's Schedules C are business expenses, and some miles claimed on his Schedules A are unreimbursed employee expenses.

[*9] taxpayer of an established employment relationship, status, or rate of compensation. However, expenses that fall into either of these categories are nevertheless not deductible if the education: (1) is required to meet the minimum education requirements for qualification in the taxpayer's employment, or (2) qualifies the taxpayer for a new trade or business. Sec. 1.162-5(b), Income Tax Regs.

Whether education maintains or improves skills required by the taxpayer in his business is a question of fact. Boser v. Commissioner, 77 T.C. 1124, 1131 (1982), aff'd without published opinion (9th Cir. Dec. 22, 1983); Joseph v. Commissioner, T.C. Memo. 2005-169. The fact that a taxpayer's education is helpful to him in the performance of his duties does not establish that its cost is a deductible business expense. Joseph v. Commissioner, T.C. Memo. 2005-169. Taxpayers must show that there is a direct and proximate relationship between the education expense and the skills required in his or her business. Boser v. Commissioner, 77 T.C. at 1131.

Petitioner could have claimed his mileage as deductible business expenses or as deductible unreimbursed employee expenses. Petitioner's reporting of these expenses on each Schedule A shows that he considered the expenses to be in furtherance of his trade or business as a college professor pursuing an advanced

[*10] music degree, not as expenses incurred in the trade or business of a musician. As a result, petitioner must show the expenses are directly and proximately related to the skills required in his business as a college professor.

Petitioner's performance activities were directly and proximately related to his skill as a professor because he translated his specific experiences as a performer into classroom lessons. Petitioner showed that his performance activities went beyond merely being helpful for his profession; he showed a direct correlation between the costs expended to learn more about music and teaching music to students. For example, he could teach his students about influential musicians from firsthand knowledge because he had played in the same group or at the same venue. Petitioner was capable of creating these experiences only because he traveled to rehearsals and performances to hone his skill. The experiences not only helped petitioner as a music professor in general, but helped him create unique and specific teaching content. His ability to pinpoint exact stories or interactions to demonstrate an academic concept was directly and proximately related to his skill as a professor.

Petitioner could provide his students with nearly real-time updates about current developments in music because he was receiving a constant stream of new information through participating in the subject matter he taught. Accordingly,

**[\*11]** petitioner's performance activities were directly and proximately related to his skill as a professor and were ordinary and necessary expenses for his trade or business under section 162.

The deduction for educational expenses is not limited to formal or institutional education. Lage v. Commissioner, 52 T.C. 130, 134 (1969). Further, under section 1.162-5(c)(1), Income Tax Regs., fees for refresher courses and courses dealing with current developments are deductible if not disqualified by subsection (b)(2) or (3). Like most academic subjects, music is a constantly evolving area of study, and it may be necessary for instructors to stay current with the subject to adequately teach it. Petitioner studied music from two perspectives: as a performer and as an academic student. Instead of solely relying on structured classes and seminars--which may not be offered in petitioner's specific area of study--petitioner stayed abreast of new developments in his profession through active participation. In petitioner's words: "To study jazz completely, it's necessary to go places that aren't considered institutions". His performance activities kept him up to date on current developments and are therefore analogous to courses dealing with current developments.

Respondent contends that petitioner's unreimbursed employee expenses were not ordinary and necessary to his employment as a music professor. In

[*12] support of this position respondent points out: (1) petitioner generally enjoys performing, and (2) performance activities were not in petitioner's job description. Section 162 does not require activities resulting in business expenses to be unenjoyable, only that they be ordinary and necessary. Petitioner is successful in a career he enjoys and he should not be denied deductions because he likes his job.

Similarly, section 162 does not require that the expenses be explicitly connected with activities enumerated in a job description. In other words, there is not a direct connection between formally listing the activities in a job description and the deductibility of expenses incurred while performing those activities. Formal job descriptions often bear little resemblance to the duties an employee is actually expected to perform, and expenses might come from unlisted activities. For example, qualifying educational expenses may be deductible under section 162 even though the education is not explicitly listed in a job description. Section 1.162-5(b)(1), Income Tax Regs., further demonstrates the disconnect between job descriptions and deductibility of expenses because certain education expenses are not deductible even if they are explicitly required by an employer.

As noted above, certain educational expenses are not deductible whether or not they maintain or improve skills required by the taxpayer in his employment, or

**[*13]** meet the express requirements of the taxpayer's employer. Section 1.162-5(b)(2), Income Tax Regs., disqualifies education expenses if the education is required in order to meet the minimum educational requirements for qualification in his or her employment. Petitioner's ongoing music education was not necessary to meet the minimum educational requirements for qualification in his employment. He is an esteemed musician and valued professor who has taught since 1996.[8] Petitioner's current employer did not require him to make public appearances or perform to qualify for his position. Petitioner satisfied the minimum education requirements for his position before the tax years at issue. His constant learning and education through performance activities were not required to meet the minimum education requirements for qualification as a music professor.

Section 1.162-5(b)(3), Income Tax Regs., disqualifies education expenses as ordinary and necessary if the education is part of a program of study that will lead to qualifying a taxpayer in a new trade or business. Petitioner has been playing the upright bass for many years, and continuing to learn from that activity will not qualify him for a new trade or business. His extensive experience, which

---

[8]Petitioner has been featured in several prestigious publications and selected as a distinguished professor.

[*14] is similar to his activities during the years at issue, would have already qualified him for any additional new trade or business. Therefore his continuing education from these activities is not disqualified under section 1.162-5(b)(3), Income Tax Regs.

Section 274(m)(2) disqualifies deductions for travel as a form of education. See also sec. 1.162-5(d), Income Tax Regs. As noted above, the unreimbursed employee expenses were related to petitioner's travel to perform and rehearse. The physical act of performing and rehearsing is the education petitioner sought; it was not the travel itself. Petitioner's car rides to the locations did little to maintain his skill as a professor; only the activities performed after reaching the intended destination contributed to his teaching duties. Accordingly, the deductions are not disqualified under section 274(m)(2) or section 1.162-5(d), Income Tax Regs.

An employee cannot deduct expenses to the extent that the employee is entitled to reimbursement from his or her employer for expenditures related to his or her status as an employee. Lucas v. Commissioner, 79 T.C. 1, 7 (1982); Kinney v. Commissioner, T.C. Memo. 2008-287. Respondent contends that petitioner may have been eligible to be reimbursed by his employer for expenses relating to his performance activities. Indeed, petitioner's employment contracts contain a reimbursement clause for a faculty member's leave of absence to attend

[*15] professional meetings or to receive university degrees. However, respondent's position is ill formed because petitioner was eligible to be reimbursed for expenses only where petitioner requested--and was granted--a leave of absence. Petitioner did not need to request leaves of absence to attend nearby rehearsals or performances. The large number of trips petitioner took demonstrates it would be impossible to take leaves of absence for each of his trips because he would have been on leave from his job nearly every day of the year. He could often teach and perform on the same days because one activity did not necessarily interrupt the other. Consequently, the deductions are not disqualified because the expenses associated with petitioner's performance activities were not the type for which his employer would reimburse him.

B. Substantiation of the Schedule A Expenses

Petitioner and respondent disagree on the number of miles driven for the same trips: petitioner claimed 8,504 miles as Schedule A deductions for the same trips for which respondent allowed 7,392 miles as Schedule C travel expense deductions. Respondent did allow petitioner to claim some miles he drove in the 2002 tax year for Schedule C expenses. Respondent allowed a $2,698 travel expense deduction for 7,392 miles and a $602 car and truck expense deduction for

[*16] 1,650 miles for the 2002 tax year.[9] Petitioner conceded that respondent's

Schedule C adjustments were correct for the 2002 tax year and he cannot deduct

expenses for the same mileage on his Schedule A. Therefore, regardless of

substantiation, expenses for 10,154 miles are disallowed as Schedule A deductions

because they were already allowed as Schedule C deductions for petitioner's 2002

tax year.[10]

Respondent disallowed all of petitioner's claimed vehicle expense

deductions on each Schedule A. A taxpayer may deduct vehicle expenses on the

basis of actual cost or by using the standard mileage rate, provided that he or she

substantiates the amount of business mileage and the time and purpose of each

use. See sec. 1.274-5(j)(2), Income Tax Regs. If the taxpayer uses the standard

mileage rate and satisfies these requirements, he or she may deduct vehicle

expenses in an amount equal to the rate multiplied by the number of business

miles. Before section 274 was enacted, the Court could approximate the amount

---

[9]The travel expense deduction is for trips petitioner drove to: Atlanta, Ga; Toronto, Can.; St. Paul, Minn.; and St. Louis, Mo., and two trips to New Orleans, La.

[10]The 8,504 miles that petitioner reported for some trips are excluded from his Schedule A because he was already allowed a travel deduction for the same trips on his Schedule C. Similarly, 1,650 of the miles are not allowed because they were allowed as Schedule C car and truck expenses.

**[\*17]** of an expense allowable as a deduction if a sufficient basis to make an estimate was presented. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Section 274, however, supersedes the Cohan doctrine and requires taxpayers to meet strict substantiation requirements with respect to any passenger automobile. Secs. 274(d), 280F(d)(4)(A)(i). The Cohan doctrine still applies when a taxpayer's records have been destroyed or lost because of circumstances beyond the taxpayer's control, such as destruction by fire, flood, or earthquake. See sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). When this happens, a taxpayer may substantiate the claimed deductions by making reasonable reconstructions of the expenditures or use. Id.

Petitioner testified credibly that he contemporaneously created mileage logs during the 2002, 2003, and 2004 tax years but those records were later destroyed when his basement flooded. Flooding is one of the enumerated circumstances where section 1.274-5T(c)(5),Temporary Income Tax Regs., supra, applies. Petitioner provided evidence and credibly testified that there was a flood and that the driving logs for tax years 2002, 2003, and 2004 were destroyed as a result. Therefore, petitioner may substantiate the claimed deductions by making reasonable reconstructions of the expenditures.

[*18] Fortunately for petitioner, the mileage log for tax year 2006 was not destroyed in the flood. Petitioner's 2006 mileage log showed that he traveled nearly every day of the year. His schedule may have been extreme, but the extremity is not a bar to deducting the expenses if properly substantiated. Petitioner had several recurring musical commitments, and he used his 2006 mileage log to reconstruct the mileage logs for tax years 2002, 2003, and 2004. He could accurately estimate the date of occurrence and distance traveled to specific locations. For example, if he had a standing rehearsal with the same group every Tuesday at the same location, he could carry that information from his 2006 mileage log to past years. Petitioner credibly testified that he was conservative and did not overestimate the reconstructions. Petitioner has therefore substantiated the vehicle expenses for mileage reported in the mileage logs for tax years 2002, 2003, 2004, and 2006.

In sum, petitioner's Schedule A vehicle expenses for performance activities are ordinary and necessary for his job as a music professor. As discussed below, petitioner conceded that he should have claimed some of the miles for business deductions on his Schedules C. Petitioner cannot claim two deductions for the same expense, and he is entitled to deduct for mileage on his Schedule A only to the extent that he did not deduct for it as Schedule C expenses. Accordingly,

[*19] petitioner adequately substantiated the miles for his 2002, 2003, 2004, and 2006 tax years to the extent he did not deduct them as Schedule C expenses.

C.  Schedule C Expenses

Respondent reclassified some of petitioner's Schedule A expenses as Schedule C expenses.  Through his proposed amended returns, petitioner accepted all of respondent's Schedule C changes for tax year 2002, which included $4,826 for travel expenses, $602 for car and truck expenses, and $1,180 for other expenses.  For tax years 2003, 2004, and 2006 petitioner and respondent disagree on the deductions.  Respondent reclassified some of petitioner's Schedule A deductions as Schedule C deductions in the amounts of $2,295, $5,112, and $1,957 for tax years 2003, 2004, and 2006, respectively.[11]  Petitioner did not concede respondent's Schedule C reclassifications and instead claimed different Schedule C deductions of $1,998, $4,861, and $500 for the 2003, 2004, and 2006 tax years on his proposed amended returns.[12]  Petitioner did not offer any evidence to substantiate his proposed deductions.  Petitioner did not show any receipts or

_____

[11]The other Schedule C deductions respondent allowed are for fees, musical supplies, conference costs, and band costs.

[12]Again, the Court stresses that these numbers reflect the positions that petitioner expressed at trial through his proposed amended returns.  Petitioner did not claim any Schedule C deductions on his originally filed returns.

[*20] canceled checks or testify in support of his tax positions on the Schedule C deductions; he merely presented his proposed amended returns to the Court and asked the Court to accept his version. Petitioner has failed to show that he is entitled to the Schedule C deductions he claimed on his proposed amended returns. Accordingly, respondent's reclassifications of petitioner's Schedule A expenses as Schedule C expenses are sustained for tax years 2003, 2004, and 2006.

Petitioner also claimed Schedule C deductions for the business use of his home for tax years 2002, 2003, 2004, and 2006 on his proposed amended returns. Petitioner did not claim these deductions on any of his originally filed tax returns and first asserted them on his proposed amended returns.

Under section 280A(c)(1), a taxpayer may be allowed a deduction for the business use of his or her home if the item is allocable to a portion of the dwelling unit that is exclusively used on a regular basis for certain enumerated business purposes. See sec. 280A(c)(1)(A), (B), and (C). Petitioner did not claim deductions for business use of his home in his original tax returns; instead, petitioner presented modified tax returns at trial to demonstrate he believed he was entitled to such deductions. Petitioner testified that he did not originally report the business use of his home because he thought he could validly claim enough other

[*21] deductions to entirely offset his income. Petitioner did not, however, present any evidence or testimony to demonstrate that there was a portion of his dwelling that was regularly and exclusively used for any business purpose. He generally noted that he used his home for business purposes but did not offer any evidence to corroborate the area or the business use of that area as required by section 280A(c)(1)(A), (B), and (C). See also Sam Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1557 (1987). Accordingly, petitioner is not entitled to additional Schedule C deductions for business use of his home for tax years 2002, 2003, 2004, and 2006.

D. Penalties and Additions to Tax

The Commissioner has the burden of production with respect to the liability of an individual for any penalty, addition to tax, or additional amount. Sec. 7491(c). The Commissioner satisfies this burden of production by coming forward with sufficient evidence indicating that it is appropriate to impose the penalty, addition to tax, or additional amount. See Higbee v. Commissioner, 116 T.C. 438, 446, (2001). Once the Commissioner satisfies this burden of production, the taxpayer must persuade the Court that the Commissioner's determination is in error by supplying sufficient evidence of an applicable exception. Id.

[*22] Sections 6011 and 6012 require every individual who has gross income in excess of certain amounts for a taxable year to file an income tax return. Section 6651(a)(1) provides for an addition to tax for failure to file a timely return, equal to 5% of the amount required to be shown as tax on the return, for each month or fraction thereof during which such failure continues, not exceeding 25% in the aggregate. A taxpayer can avoid the addition by showing reasonable cause, which includes proving that the taxpayer acted with ordinary care and prudence and nevertheless was still unable to file as required. See United States v. Boyle, 469 U.S. 241, 246 (1985); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Respondent met his burden under section 7491(c) with respect to the section 6651(a)(1) addition to tax by establishing that petitioner filed his returns only several years after they were due. At trial petitioner conceded that he did not have any reason to be excused from the failure to timely file addition to tax. Petitioner did have a death in the family and other personal difficulties, and the Court is not unsympathetic to his position. The circumstances, however, do not excuse petitioner from filing his original returns several years late. Respondent's determination is sustained for the section 6651(a)(1) addition to tax for tax years 2002, 2003, and 2004.

**[*23]** Generally, section 6662(a) and (b)(1) authorizes the Commissioner to impose a 20% accuracy-related penalty on the portion of an underpayment of income tax attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs. Disregard of rules or regulations is careless if "the taxpayer does not exercise reasonable diligence to determine the correctness of a return position" and is reckless if "the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe." Sec. 1.6662-3(b)(2), Income Tax Regs.; see also Neely v. Commissioner, 85 T.C. 934, 947 (1985).

Similarly, section 6662(a) and (b)(2) also authorizes the Commissioner to impose a 20% penalty if a portion of an underpayment is due to a substantial understatement of income tax. An "understatement" means the excess of the amount of the tax required to be shown on the return over the amount of the tax that is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the

[*24] understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

The exact amount of the understatement for each year shall be computed as part of the Rule 155 calculations. Even if the understatement for any year is not substantial within the meaning of section 6662(a), respondent met his burden of production with respect to negligence by showing that petitioner claimed deductions to which he was not entitled. Negligence is determined by testing a taxpayer's conduct against that of a reasonable, prudent person. See Sandvall v. Commissioner, 898 F.2d 455, 458-459 (5th Cir. 1990), aff'g T.C. Memo. 1989-189, and aff'g T.C. Memo. 1989-56. On his originally filed tax returns, petitioner did not exercise reasonable diligence to determine the correctness of his return positions--he did not conduct himself as a reasonable, prudent person when he failed to retain records sufficient to substantiate his originally claimed deductions.[13]

---

[13]Although petitioner substantially changed his proposed reporting positions during the course of the trial, the sec. 6662(a) penalty applies to the underpayments reflected on petitioner's originally filed returns, not to those reflected on the proposed amended returns presented through the Court proceedings, because the new returns are not qualified amended returns under sec. 1.6664-2(c)(2), Income Tax Regs. See Perrah v. Commissioner, T.C. Memo. 2002-283. Qualified amended returns may be considered for sec. 6662(a) penalty purposes. Id.

[*25] Once the Commissioner meets his burden of production under section 7491(c), the taxpayer bears the burden of showing that the determination is incorrect. Petitioner had the burden of producing sufficient evidence to prove that respondent's penalty determinations are incorrect. See Higbee v. Commissioner, 116 T.C. at 446-447. Petitioner failed to establish that he was not negligent in the position taken on his originally filed returns or that the substantial understatement penalties should not apply.[14]

We have considered the remaining arguments made by the parties and, to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[14]Sec. 6664(c)(1) provides an exception from the penalty with respect to any portion of an underpayment if the taxpayer shows that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Reliance upon the advice of a tax professional may establish reasonable cause and good faith. See United States v. Boyle, 469 U.S. 241, 250 (1985). Petitioner did not argue that the exception of sec. 6664(c)(1) to the sec. 6662(a) accuracy-related penalty applies, nor does the record allow us to conclude that relief under this exception is appropriate.