T.C. Summary Opinion 2008-75

UNITED STATES TAX COURT

DAWN LEA BLACK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10914-05S.               Filed June 30, 2008.

Dawn Lea Black, pro se.

Erin R. Hines, for respondent.

PANUTHOS, Chief Special Trial Judge:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.[1]

_____

   [1] Special Trial Judge Carleton D. Powell, before whom this
case was initially tried and to whom it was submitted, died Aug.
23, 2007.  The Court notified the parties and proposed to assign
the case to another judicial officer for the purpose of preparing
the opinion and entering the decision based on the record of that
trial.  Respondent consented to the reassignment.  Petitioner
                                               (continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code as amended and as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $14,145 deficiency in petitioner's 1998 Federal income tax, a $3,536.25 failure to file addition to tax, and a $2,829 accuracy-related penalty. After concessions[2] the issues for decision are: (1) Whether certain payments made to petitioner by Erdman Rentals, LLC in 1998, totaling $30,034, are taxable; (2) whether petitioner is entitled to business

---

[1](...continued)
objected to the reassignment and moved to supplement the record. A further trial was held on Feb. 26, 2008, at which time the parties submitted a supplemental stipulation of facts with attached exhibits. The Court heard additional testimony and received additional documents.

[2] At the initial trial respondent conceded that of the $38,716 in nonemployee compensation reported as paid to petitioner by Erdman Rentals, LLC, $8,682 represents reimbursement of expenses. After this adjustment $30,034 of nonemployee compensation remains, all of which respondent contends is unreported income. Petitioner conceded that she received but failed to report $1,540 in dividends in 1998 from the Alaska Permanent Fund.

Petitioner failed to address respondent's self-employment tax determination with respect to income from Erdman Rentals, LLC, other than to dispute that the amount she received is income in the first instance.

expense deductions in amounts greater than respondent allowed; and (3) whether petitioner is liable for an addition to tax under section 6651(a)(1) and an accuracy-related penalty under section 6662(a).

For convenience, after a brief factual overview, we have combined the findings of fact, discussion of pertinent legal issues, and our conclusions. The parties have stipulated some of the facts, and we so find. We incorporate the stipulation of facts, the supplemental stipulation of facts, and the attached exhibits by this reference. Petitioner resided in Alaska when she filed the petition.

In 1998 petitioner was a member of Erdman Rentals, LLC (hereafter Erdman Rentals or the company), a residential real estate rental company in Alaska. The other two members were petitioner's parents, Donald and Sophia Erdman. Petitioner managed the rental properties for Erdman Rentals, and the company reported on Form 1099-MISC, Miscellaneous Income, that it paid nonemployee compensation of $38,716 to petitioner in 1998. Petitioner did not report this amount on her 1998 Federal income tax return.

Petitioner also worked with a coauthor on a book about Natalia Shelikhova (Mrs. Shelikhova) in 1998.[3] She paid amounts

---

[3] Although the book had not been published as of the date of trial, petitioner asserted that she had arranged for it to be
(continued...)

for travel, for purchasing and framing original works of art, and for copying documents and communicating with her coauthor. Petitioner reported those expenditures on Schedule C, Profit or Loss From Business. She did not report any business income or receipts.

Petitioner prepared her 1998 Federal income tax return and filed it on October 23, 2000. She reported her occupation as "Writer/Manager". Petitioner's 1998 Form 1040, U.S. Individual Income Tax Return, reports $10,717 on line 7 as wages, salaries, tips, etc., and a business loss of $10,035 on line 12.[4] Petitioner's tax return as filed reported negative adjusted gross income, no taxes withheld, and no taxes owed.

Respondent issued a notice of deficiency determining that petitioner received, but failed to report, $38,716 in income from Erdman Rentals and $1,540 in dividend income from the Alaska Permanent Fund. See supra note 2. Respondent also disallowed business expense deductions, as follows:

---

[3](...continued)
published by the University of Alaska Press, Rasmuson Library Translation Series.

[4] Only the $10,035 business loss is carried down as total income on line 22 of petitioner's 1998 Form 1040, U.S. Individual Income Tax Return. The $10,717 reported on line 7 is ignored for the remainder of the handwritten return. Respondent has not asserted a deficiency related to this amount.

| Business Expense | Claimed | Allowed | Disallowed |
|---|---|---|---|
| Travel expense | $1,498 | $755 | $743 |
| Meals and entertainment expense | 502 | 63 | 439 |
| Legal/professional services | 8,035 | -0- | 8,035 |
| Total | 10,035 | 818 | 9,217 |

There is no dispute that petitioner paid the claimed amounts. However, respondent maintains that petitioner has not proven that the disallowed deductions represent ordinary and necessary expenses. In addition, respondent determined an addition to tax for failure timely to file and an accuracy-related penalty.

Petitioner asserts that her parents gave her a $20,000 gift, that Erdman Rentals erroneously reported that it paid compensation income to her, and that, even including the unreported dividend income, her tax liability is zero because she had no net income. She also asserts that her late filing was not due to negligence.

We begin by noting that the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that she is entitled to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Under section 7491(a)(1), if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue. Section 7491(a)(2) provides that the burden will shift only if the taxpayer complies with substantiation requirements, maintains sufficient records, and cooperates fully with the Commissioner's reasonable requests. Although petitioner introduced myriad documents: (a) She did not maintain books and records of her writing activity sufficient to document her expenses clearly; and (b) the records she introduced regarding Erdman Rentals do not clearly demonstrate which of the numerous payments petitioner made to herself and to her creditors from Erdman Rentals constitute alleged gifts from her parents, expense reimbursements, or payments for her services. Petitioner did not argue that section 7491 applies. Petitioner has not satisfied the requirements of section 7491(a)(2), and we conclude that the burden remains with petitioner.

## 1. Unreported Income

Petitioner conceded that she received the dividend income and admits that she received the funds from Erdman Rentals. However, she challenges respondent's characterization of the Erdman Rentals payments as income, asserting that she received

gifts from her parents, paid through the company, and reimbursement for expenses she incurred in managing the company.

Erdman Rentals reported paying nonemployee compensation of $38,716 to petitioner. Petitioner asserts that a mistake by Erdman Rentals' accountants caused the company to file a Form 1099-MISC and to report those payments as compensation paid to her.[5]

Although petitioner represents that she was an unpaid, volunteer manager simply helping out in her parents' business, she was actively involved in running the business throughout 1998. For example, she had check writing privileges on the Erdman Rentals checking account which she exercised extensively. The record includes copies of myriad checks written by petitioner, drawn against Erdman Rentals, and payable to petitioner. The memo lines of these checks do not indicate the purpose of each payment. Petitioner claims that all payments to her were either gifts or expense reimbursements. Petitioner introduced a document titled "Erdman Rentals Contract labor pay for Dawn Lea Black 1998" that lists checks from Erdman Rentals to petitioner in 1998, totaling $38,716.64, but it does not identify

---

[5] There is no indication that petitioner ever caused the company to issue a corrected Form 1099-MISC. We find this noteworthy in light of petitioner's position as manager of Erdman Rentals.

the purpose of any of the checks or indicate which of the payments were gifts or which were expense reimbursements.

The record includes the Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., for Erdman Rentals. These documents support petitioner's contention that she paid certain expenses for Erdman Rentals and was reimbursed for many of those expenditures; i.e., comparable amounts contributed by her and distributed to her.[6] However, these documents are not consistent with petitioner's assertion that her parents made gifts to her via the company; excluding her apparent expense reimbursements, the total amount Erdman Rentals distributed to all its members is far less than the $20,000 petitioner claims she received as a gift.

Petitioner failed to maintain adequate books and records. The voluminous documents she introduced at trial were inadequately organized and fail to reconstruct the transactions between petitioner and Erdman Rentals to prove that respondent's determinations are erroneous. Petitioner has failed to prove that any of the payments from Erdman Rentals was a gift from her parents. She has also not proven that her expense reimbursements

---

[6] The record includes numerous copies of checks written by petitioner, drawn against a bank account in her name, and purportedly used for Erdman Rentals' expenses. The sum of these checks is less than the amount respondent allowed as expense reimbursement, see supra note 2, and also less than the amount Erdman Rentals reported as distributed to petitioner in 1998.

were greater than respondent allowed.  Considering respondent's concession, respondent's determination as to unreported income is sustained.

2.  Business Expenses

Ordinarily, a taxpayer is permitted to deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Sec. 162(a).  An ordinary and necessary expense is one that is appropriate and helpful to the taxpayer's business and that results from an activity that is common and accepted practice.  Boser v. Commissioner, 77 T.C. 1124, 1132 (1981), affd. without published opinion (9th Cir., Dec. 22, 1983).  A taxpayer is required to maintain records sufficient to establish the amount of her deductions.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Section 162(a)(2) allows deductions for "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business".  However, for trips undertaken for other than business purposes, "the travel fares and expenses incident to travel are personal expenses and the meals and lodging are living expenses."  Sec. 1.162-2(a), Income Tax Regs.  A taxpayer may not deduct personal, family, or living expenses.  Sec. 262(a).

Section 274(d)(1) generally disallows any deduction under section 162 for, among other things, "any traveling expense

(including meals and lodging while away from home)", unless the taxpayer complies with stringent substantiation requirements as to the amount, time and place, and business purpose of the expense.[7]

A.   Traveling Expenses

In 1998 petitioner and her coauthor were writing a book about a Russian woman, Mrs. Shelikhova, who lived in the 18th century.  Mrs. Shelikhova took over her husband's trading company in Alaska when he died in 1795 and eventually ran the Russian-American Company (established by the Russian Government to continue exploiting Alaskan resources).  Petitioner referred to Mrs. Shelikhova as the first woman governor of Alaska.

Petitioner asserts that she has a history of paid writing assignments, including writing for the Kodiak Fisherman Newspaper.  Respondent does not challenge petitioner's reporting that her writing activity constituted a trade or business in 1998.  Petitioner did not maintain formal records or books of account for her writing activity, though she did retain and

---

[7] Sec. 274 supersedes the doctrine in Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), which otherwise would permit the Court to estimate a taxpayer's expenditures, given a reasonable evidentiary basis.  See sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985); see also Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  Thus, strict substantiation is required for travel expenditures, including transportation, lodging, and meal expenses.

introduce numerous receipts and credit card statements in an attempt to document business expenses for her writing activity.

Petitioner worked with Alexander Petrov, Ph.D. (Dr. Petrov), a member of the Russian Academy of Sciences, as her coauthor. In 1998 petitioner traveled to Corvallis, Oregon, to meet with Dr. Petrov and make a presentation about the book to the Humanities Institute at the University of Oregon. (At that time Dr. Petrov was a visiting professor at the University of Oregon.) She also brought Dr. Petrov to Alaska, assertedly for research and further collaboration on the book. Finally, petitioner flew to Paris and traveled by train to Berlin, where she met with Dr. Petrov while he was working in Germany. She asserts that the purpose of her trip to Europe was to work with Dr. Petrov on translating documents related to their book. In an e-mail to Dr. Petrov, however, petitioner wrote that she was looking forward to her vacation in Germany and to getting together with Dr. Petrov in regard to the book project.

Petitioner incurred transportation, lodging, and meal expenses for her trip to Oregon, Dr. Petrov's trip to Alaska, and petitioner's trip to Europe. She did not maintain a contemporaneous log chronicling these travel expenses. Petitioner's travel summary explains that the business purpose of one trip she took to Anchorage with her father was "to accompany

him to cataract surgery so his eyesight for our business would improve."[8]

Petitioner claimed $1,498 for travel expenses and $502 for meals and entertainment expenses (50 percent of $1,004 reported as expended on meals, see sec. 274(n)(1)(A)) on her 1998 Schedule C. At trial she claimed $1,542.54 in expenses for her trip to Oregon and $2,374.03 for her trip to Europe. Respondent allowed deductions for some of the expenses of her trip to Oregon but disallowed all of the deductions claimed for Dr. Petrov's trip to Alaska and for petitioner's trip to Europe.

Respondent's examining agent appears to have overlooked $12.50 petitioner paid for fuel for the car she rented during her Oregon trip (which rental expenses respondent otherwise allowed). Petitioner is entitled to an additional deduction of $12.50 for her trip to Oregon. Petitioner has not proven that she is entitled to any further expenses for this trip.

Petitioner testified that she brought Dr. Petrov to Alaska. The record does not clearly reflect the dates of this trip, the expenses she incurred for this travel, or the primary purpose of

---

[8] It is not clear whether petitioner claimed deductions for expenses for any trip to Anchorage with her father on her Federal income tax return for 1998. We note, however, that it is clear that the purpose of such a trip was personal and that any related travel expenses are not deductible. See Fred W. Amend Co. v. Commissioner, 55 T.C. 320, 325-326 (1970), affd. 454 F.2d 399 (7th Cir. 1971).

this trip.[9]  Petitioner has not met the strict substantiation requirements of section 274(d) with respect to this travel, and we conclude that she is not entitled to any deduction for this travel.

Finally, petitioner traveled to Europe in December 1998, flying to Paris, where she stayed for 2 days before taking a train to Berlin to meet Dr. Petrov.  During at least some of the 5 days spent in Berlin, petitioner and Dr. Petrov worked on the book.  Petitioner and Dr. Petrov then traveled to Paris, where petitioner stayed for 3 additional days before returning to the United States.  Petitioner's travel expenses for this trip are deductible only if the trip is related primarily to her business. See sec. 1.162-2(b)(1), Income Tax Regs.  Petitioner referred to this trip as her "vacation".  Further, the record is unclear as to how much time she spent working on the book (of the 5 days in Berlin or the 3 days petitioner and Dr. Petrov shared in Paris). We conclude that petitioner has not proven that the trip was primarily business and not personal.  Thus, her travel expenses are not deductible.

Nevertheless, expenses incurred while at a mixed business and pleasure destination which are properly allocable to a taxpayer's business are deductible even though the traveling

---

[9] No summary of Dr. Petrov's trip to Alaska appears in the record, and receipts for such trip are not readily identifiable.

expenses to and from the destination are not deductible.  Sec. 1.162-2(b)(1), Income Tax Regs.  The taxpayer must still satisfy the requirements of section 274(d) and identify the amount, time and place, and the business purpose of the expenses.  Petitioner paid for meals for herself and Dr. Petrov, and she referred to these meals as business meetings.  Petitioner's receipts and summary identify the amounts, dates, and locations of the claimed meal expenses, but the only evidence of a business purpose is her vague and general testimony that she and Dr. Petrov worked on the book in both cities.  We are not convinced of the business purpose of these meals or that petitioner and Dr. Petrov worked on the book during the meals.  Petitioner has not proven that her trip to Europe or her meals with Dr. Petrov were ordinary and necessary expenses, and we conclude that she may not deduct those expenses.

With the exception of the additional allowance for the Oregon trip discussed above, respondent's determination as to petitioner's travel expenses is sustained.[10]

---

[10] We note that the record does not clearly indicate precisely which travel and meal expenses petitioner included in the $2,000 of travel, meals, and entertainment expenses reported on her 1998 Schedule C.  At trial petitioner summarized roughly $3,900 in expenses for her trips to Oregon and Europe, which clearly exceeds the amounts she originally claimed.  She did not, however, argue that her return as filed claimed less than her actual business travel expenses.

B.    Legal and Professional Expenses

At trial petitioner explained that the business expenses she claimed as legal and professional services on Schedule C were predominantly her costs for purchasing original artwork, with a small amount representing expenditures for making copies for Dr. Petrov and communicating with him by telephone and Internet.[11]

Petitioner purchased original artwork at a local gallery in Kodiak, Alaska, in 1998.  Petitioner asserts that she selected artwork related to places where Mrs. Shelikhova lived in Alaska (including petitioner's hometown), to animals indigenous to Alaska, and to Russia in general.  Petitioner intended to photograph those pieces of art and to use some of the photographs in the book.[12]

Petitioner did not provide any evidence that she obtained licenses from copyright holders in order to use any of this artwork in her book or that she inquired into obtaining such licenses.  Merely buying original artwork, without obtaining an explicit license to use the images, does not confer on a

---

[11] Petitioner did not explain why she reported art, communication, and photocopying expenses as legal and professional services.

[12] Although petitioner bought mostly paintings, she also paid over $1,100 to purchase a set of Russian nesting dolls, which she asserted "depict Russian singers of folktales, and show a great deal about Russian thought, and life and whatnot."  She testified that she intended to photograph the dolls and publish the images in her book because they are "a very nice work of art".

purchaser any legal right to copy or use images of that artwork. Mirage Editions, Inc. v. Albuquerque A.R.T. Co., 856 F.2d 1341, 1343 (9th Cir. 1988); see also the 1976 Copyright Act, 17 U.S.C. sec. 106 (2000) (granting copyright holders the exclusive rights to reproduce their works and to prepare derivative works).

We are not convinced that this artwork was principally purchased for the book, and it does not appear that petitioner obtained permission to photograph the art she purchased and to use the images in her book. We find that the claimed expenses are not ordinary or necessary and conclude that petitioner may not deduct those expenditures.[13]

Petitioner also claimed as legal and professional expenses her costs for communicating with Dr. Petrov and for making copies for him. She introduced scant evidence of her telecommunication expenses, which are governed by the strict substantiation requirements of section 274(d), and even less evidence that such expenses were business and not personal. While the record

---

[13] Without licenses to copy the pieces and use the copies in her book, the art purchase expenses are not ordinary business expenses because they are not helpful or appropriate to petitioner's business. See Commissioner v. Tellier, 383 U.S. 687, 689 (1966). Buying such items without at least investigating whether they could lawfully be used as petitioner intended is not a reasonable, common, or accepted business practice. See Boser v. Commissioner, 77 T.C. 1124, 1132-1133 (1981), affd. without published opinion (9th Cir., Dec. 22, 1983).

includes some apparent copying expenses, the connection between petitioner's writing activity and such expenditures is not clear.

Petitioner is not entitled to deduct her expenditures for artwork, telecommunications, or copying.  Respondent's determination as to legal and professional expenses is sustained.

3.   Addition to Tax and Penalty

By virtue of section 7491(c), the Commissioner has the burden of production with respect to the accuracy-related penalty.  To meet this burden, he must produce sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner meets this burden of production, a taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect.  Rule 142(a); see Higbee v. Commissioner, supra.  As a defense to the penalty, the taxpayer bears the burden of proving that she acted with reasonable cause and in good faith.  See sec. 6664(c)(1); see also Higbee v. Commissioner, supra at 446-447; sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner filed a self-prepared Federal income tax return for tax year 1998 on October 23, 2000.  Petitioner explained that she filed "after the accountants were done filing everything, but yeah, I was late filing.  That I will admit."

Respondent determined an addition to tax under section 6651(a)(1) because petitioner failed to file her 1998 Federal income tax return on time. Petitioner stated in her petition that "My lateness was not due to negligence." She did not, however, assert that her late filing was due to reasonable cause and not due to willful neglect. See sec. 6651(a)(1). Respondent's determination is sustained, and petitioner is liable for the section 6651(a)(1) addition to tax.

Respondent also determined an accuracy-related penalty under section 6662(a). Inter alia, section 6662 provides that a penalty shall apply to any substantial understatement of income tax, which is defined as an understatement exceeding the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(b)(2), (d)(1). The tax required to be shown on petitioner's return is over $14,000. Petitioner reported $0. Her understatement is over $14,000, which is greater than $5,000 and greater than 10 percent of $14,000. Petitioner has not demonstrated that she had reasonable cause for her understatement or that she acted in good faith. See sec. 6664(c). Thus, petitioner is liable for the section 6662(a) accuracy-related penalty for a substantial understatement.

To reflect the foregoing,

Decision will be entered

under Rule 155.